CARLAND, appellant, *v.* COMMISSIONERS OF CUSTER COUNTY, respondent.

PUBLIC OFFICERS — *Title to office cannot be collaterally attacked.*— When a person is acting as a public officer under the apparent authority of an act of the legislature, his title to the office cannot be collaterally attacked.

REMOVAL OF COUNTY TREASURER — *When authorized.*— The board of county commissioners of Custer county has power to declare vacant the office of county treasurer, upon the failure of such officer to file his official bond in the manner required by law, or when it appeared that the books of such office did not show the actual condition of the office, or that certain funds of the county had been diverted from their proper channel, and unlawfully paid out, or that there had been culpable negligence in the care and keeping of public moneys.

BOND OF COUNTY TREASURER.— Section 433, rather than section 457, Revised Statutes of Montana, controls in the matter of the bond of the county treasurer, as more specific and in accord with public policy.

TERMS OF DISTRICT COURT.— When a court is held in any county of the territory, by an order of the supreme court, by any of the judges thereof, their proceedings are regular and valid.

*Appeal from First District, Custer County.*

CHUMASERO & CHADWICK, for appellant.

Plaintiff, on the 12th day of April, 1883, filed in the district court of Custer county his petition for a writ of *certiorari*, praying for the review and annulment of an order passed by the defendants, removing him from the office of treasurer of Custer county, to which he had been duly elected at a general election held November 7, 1882.

The petition set forth the fact of such election, and the qualification of plaintiff, and the filing of the bond then

required, and within the time required by law, and the taking of the oath of office. More than two months after the filing of such bond (which the law did not require should have any justification of sureties), the board of county commissioners met on the 8th day of March, and passed an order holding over the bond so filed to await the justification of sureties; no notice of such action having been given to plaintiff until the 24th March, 1883.

During the interval, to wit, on the 8th day of March, 1883, by an illegal, unauthorized and void act of the territorial legislature, the then legally elected and constituted board of county commissioners were ousted from office, the offices of county commissioners of Custer county were declared vacant, and they were prohibited from performing any official duty, and other persons named in such act were appointed by the legislature in their place. See Act of March 8, 1883, p. 140.

The individuals thus appointed took possession of the offices and assumed to act in the place of the legal board of county commissioners, and it is with their action that we have to deal.

On the 31st of March, for no assigned reason, they refused to accept the bond filed by plaintiff, and arbitrarily passed an order raising the penalty of the bond to the sum of $50,000.

The plaintiff prepared and presented a bond in compliance with the order, which the usurping board declared to be insufficient, and thereupon immediately passed a resolution removing him from the office of treasurer; giving him no opportunity to appear in his own behalf, or allowing any justification of the sureties, and took possession of all the books, papers and records of the office of treasurer.

We contend, first, that the individuals who assumed to act and exercise the office of board of county commissioners were simply usurpers, and that their acts as such

were void. That the legislature had no power or authority to remove the then legally constituted board from office. The legislature is not supreme, and has no authority to exercise a power essentially judicial or executive. *Wynhammer* v. *Pope*, 13 N. Y. 391, 395, 432; *Ervine's Appeal*, 16 Pa. St. 256, 263, 266–268; *Greenhough* v. *Greenhough*, 11 Pa. St. 494–95; *De Chastellux* v. *Fairchild*, 15 Pa. St. 18–20; *Newland* v. *Marsh*, 19 Ill. 382; *Taylor* v. *Porter*, 4 Hill, 144; *Parmlee* v. *Thompson*, 7 Hill, 80, and note; Sedg. Const. & Stat. Law, secs. 154 to 178.

It will not be questioned, we believe, that the act of removal by the legislature was a judicial act.

One holding an existing office under a fixed tenure cannot be removed, nor can his regular term of office be abridged by an act of the legislature, other than by an act abolishing the office. *State* v. *Wiltz*, 11 La. Ann. 439; *Brown* v. *Grover*, 6 Bush (Ky.), 1.

The legislature, while it continues an office, cannot oust an incumbent during the time for which he was chosen. *Cotten* v. *Lewis*, 7 Jones, N. C. 545; R. S. Mont. p. 480, secs. 343, 344.

The act last cited is a general act, affecting and operative over the whole territory, and affecting alike all county commissioners; any act affecting it must be equally general to be valid.

The legislature have not the power to suspend the operation of a general law in favor of an individual. *Holden* v. *James*, 11 Mass. 396, and cases before cited.

The legislature have no right to remove a particular individual singled out from others of the same class. *Commonwealth* v. *Gamble*, 1 Am. Rep. 422, 429, 430; *Low* v. *Commonwealth*, 4 Met. (Ky.) 237.

While the legislature may have the power to abolish an office entirely, still such act, to be valid, must include the whole territory. Laws must be uniform throughout the entire territory.

Officers are entitled to trial before removal (R. S. p. 296, secs. 60, 61; *People* v. *Seery*, 55 How. Pr. 455); and this rule applies as well to removals by a legislative body as by a board of county commissioners or other body authorized to act.

Where the constitution provides for an appointment in a particular manner, the legislature has no power to create a new office for the same duties or direct the appointment in a different manner. *Warner* v. *Pope*, 2 Denio, 274 *et seq.*

The organic act, section 7, provides that "all township, district and county officers . . . shall be appointed or elected, as the case may be, in such manner as shall be provided by the governor and legislative assembly of Montana territory."

This provision evidently means that such appointment or election shall be by a general law applicable to the whole territory. It means uniformity. And the legislature, acting under the power thus conferred, did provide for the election and qualification of the treasurer. R. S. p. 497, sec. 433; p. 501, sec. 457.

This act was, at the time of the election of the plaintiff and of the passage of the act of 8th March and of plaintiff's removal, still in full force.

We insist that the organic act, and the law passed in accordance with its provisions, while both remain in force, have the force and effect of a *constitutional provision,* and are to be so considered, and cannot be avoided or done away with piecemeal, or in a particular case, to gratify private malice or to subserve political interests, by an arbitrary exercise of power. Such legislation is mere usurpation.

There was no vacancy in the offices of county commissioners when the legislature appointed individuals to take possession. Nor had it power to declare a vacancy. The laws of the territory declare when vacancies shall occur. R. S. p. 523, sec. 554. And how such vacancies shall

be filled. R. S. p. 601, sec. 937. A vacancy must be established in a proceeding regularly tending to that end. *Stokes* v. *Kirkpatrick,* 1 Metc. (Ky.) 138; *Tappan* v. *Gray,* 9 Paige Ch. 507. And while in force, these laws must control. A proceeding in violation of their provisions is not only unlawful and unconstitutional, but is revolutionary and an intolerable usurpation.

It follows, then, we urge, that the legislature acted without authority in removing the legal board of county commissioners and appointing others in their place by an arbitrary stretch of power; that such act is a nullity and void, and that the individuals appointed had no authority to act, and that whatever they did was equally void.

And further, even if their acts are to be regarded at all, it can only be while acting strictly in conformity with the laws under which they assumed to act, which they did not do in this case.

In making removals from office, boards of county commissioners act judicially, and have no power to remove without affording the incumbent an opportunity for trial, which in this case was not done.

There is one other proposition which we deem fatal in this case, but which we hesitate to present, as we desire to have a decision of this court upon the other questions presented in our brief, believing them to be properly raised and worthy of deliberate and careful consideration.

We understand the rule to be, that courts will take judicial notice of their own records, and of what is generally known within the limits of their jurisdiction. *Brown* v. *Piper,* 91 U. S. 37.

Courts of a particular state are bound to take judicial notice of its boundaries, and its division into towns and counties, and the limits of such divisions and of its judicial districts. *Lyell* v. *Lapeer Co.* 6 McLean, 446; *United States* v. *Johnson,* 2 Saw. 482; *Buchanan* v. *Whit-*

*man,* 36 Ind. 257; *Goodwin* v. *Appleton,* 32 Me. 453; *Ham* v. *Ham,* 39 id. 363; *Keyser* v. *Coe,* 37 Conn. 597; *Winnipiseogee Lake Co.* v. *Young,* 40 N. H. 420; *State* v. *Powers,* 25 Conn. 48; *Commissioners* v. *Spitzler,* 13 Ind. 255; *Ind. & Cinn. R. R. Co.* v. *Case,* 15 Ind. 42; *Buckingham* v. *Gregg,* 19 Ind. 401; *Hinckley* v. *Beckwith,* 23 Wis. 328; *Wright* v. *Hawkins,* 28 Tex. 452; *Brown* v. *Elms,* 10 Humph. 135; *King* v. *Kent,* 29 Ala. 542; *People* v. *Robinson,* 17 Cal. 363.

In this territory the limits of judicial districts are designated and fixed by the judges of the supreme court, under the provisions of our organic act. R. S. U. S. sec. 1914. And the same section provides that they shall fix the times of holding court in the several counties in each of such districts.

Prior to the 24th day of March, 1883, the county of Custer was, by appointment of the judges of this court, placed in the first judicial district, with a regular term of court fixed for the fifth Monday of April, and Choteau county was in the third judicial district, with a term fixed for the third Tuesday of April, which, in April, 1883, fell upon the 17th day of the month, as will appear from the records of this court, and of which all were bound to take notice.

The records of this court will further show that, on the 24th day of March, 1883, two of the judges of this court met at the capitol, under authority of the organic act, and changed Custer county from the first judicial district and placed it in the third judicial district, and altered the time of holding court to the second Tuesday of April, which, in 1883, fell upon the 10th day.

On the 17th day of April the regular term of court in Choteau county commenced, and was duly held by another judge of this court, the judge of the third judicial district continuing to hold court in Custer county at the same time that court was being held in Choteau county, thus having two courts, at widely different points, trans-

acting judicial business at the same time in the same district. This, we contend, was illegal. Upon this question we cite the following authorities: If a district is composed of different counties, a trial in one of the counties on the commencement day of a term in another county is *coram non judice*. *Bates* v. *Gage*, 40 Cal. 183; *Gregg* v. *Cooke*, 7 Peck, 82; *People* v. *O'Neil*, 47 Cal. 109. A judgment rendered by a district court after the time appointed by law for its adjournment is invalid. *Smith* v. *Chichester*, 1 Cal. 409; *Domingues* v. *Domingues*, 4 Cal. 486.

It is essential to the validity of a judgment that it be rendered at the time, place and in the form prescribed by law. *Wicks* v. *Ludwig*, 9 Cal. 173.

No trial can be had or judgment rendered except in term time. *Ibid.; Norwood* v. *Kenfield*, 34 Cal. 329; *Denwood* v. *People*, 1 Hill, 343.

SANDERS & CULLEN and STREVELLE & GARLOCK, for respondent.

The right of individuals, composing and constituting the board of commissioners of Custer county at the time· of the removal of the appellant from the office of county treasurer of said county, to hold and exercise their offices as such commissioners, cannot be attacked or inquired into in this case. From the affidavit of the appellant, upon which the writ of *certiorari* in this case was granted by the court below, as well as upon the return made thereto, it appears that William Vangaskin, Thomas J. Bryan and George M. Miles were, at the time referred to in that affidavit, holding the offices and acting therein as county commissioners.

It appears, also, from an act of the legislative assembly, entitled "An act relative to the offices of county commissioners of Custer county," approved March 8, 1883, that these same persons were on that day appointed to the said offices. So long as the offices of commissioners

were held by them by virtue of such appointment, or otherwise under color of right, and they were exercising and performing the duties of such office, as appears from the record, they were at least officers *de facto*, and their acts, if in accordance with law, must be taken to be valid and binding. The offices of commissioners of Custer county being held, as they were, by the persons named, their right to hold and exercise the same cannot be drawn in question collaterally in this proceeding, which was instituted for a totally different purpose. *Commonwealth* v. *McCombs*, 56 Pa. St. 436; *Johns* v. *People*, 25 Mich. 499–503; *Douglas* v. *Wickwire*, 19 Conn. 489; *Tracy* v. *Fuller*, 13 Mich. 527, 531.

The Code of Civil Procedure provides (R. S. Mont. 117, secs. 397, 404) in what manner the right to hold an office may be tried and determined, and we submit that it cannot be done in a proceeding instituted for another purpose, or in a way not authorized by the statute.

But however this may be, statutes of the character of the one referred to are, in the absence of express constitutional provisions to the contrary, sustained by the courts. That there is nothing, either in the constitution or organic act, expressly forbidding legislation of the character contained in that act, we think will be admitted. The Revised Statutes of the United States provide (section 1857) that "all township, district and county officers . . . shall be appointed or elected in such manner as may be provided by the governor and legislative assembly of each territory."

The offices of county commissioners being then the subject of legislative creation, and there being no other restriction, it was competent for the legislative assembly to abolish these offices at any time or to cut short the term of those who were occupying them and provide that their duties should be performed by others. *Butler* v. *Penn*, 10 How. 402; *People* v. *Banvard*, 27 Cal. 470; *State* v. *Douglass*, 26 Wis. 428; *People* v. *Whitlock*, 92

N. Y. 191; *Long* v. *Mayor, etc.* 81 N. Y. 425; *Denoes* v. *Hobart*, 10 Nev. 28.

The writ of *certiorari*, resorted to in this case, issued out of the district court, directed to the board of commissioners of the county of Custer, required that the proceedings of the board concerning the removal of the appellant from the office of county treasurer be certified by the court on a day named in the writ. It being established that the persons composing the board of commissioners were acting as such commissioners in the offices to which they had been appointed, the only inquiry is, whether, in the removal of the appellant from office, they exceeded the jurisdiction conferred upon county commissioners in such cases. Upon this inquiry the return to the writ must be taken as conclusive, and must be taken to be a full return of all the proceedings had by the board to which the writ is directed. R. S. 142, secs. 540–544; *People* v. *Board of Commissioners, etc.* 73 N. Y. 437.

As appears from the transcript of the proceedings of the board of commissioners, returned to the court below in obedience to the command of the writ, the appellant was acting as county treasurer of Custer county, having entered upon the term of two years of such office, commencing on the first Monday of March, 1883. The statute of the territory declares in terms in what cases an office shall become vacant before the expiration of the term, and among others that the "office shall become vacant on . . . his (the officer's) refusal or neglect to take the oath of office, or to execute his official bond, or deposit such oath or bond within the time prescribed by law." R. S. 523, sec. 554.

The statute provides that "the county treasurer shall, before entering upon the discharge of his duties, execute to the board of county commissioners of his county a bond, with three or more sufficient sureties, to be approved by the board, and in such penal sum as they may direct,

which bond, with the approval of the board indorsed thereon by their clerk, shall be filed in the office of the county clerk; and in case the board of commissioners shall not be in session in time for any county treasurer to present his bond for their approval as above specified, or he shall be unable from any cause to present his bond at any regular meeting of the board after due notice of his election, then it may be lawful for such treasurer to present his bond to the chairman and clerk of such board for their approval, and their approval indorsed thereon shall have the same effect as if done by the board of commissioners; and in such case, when the board shall not have fixed the penal sum of such bond, it shall not be less than double the amount of all moneys directed by the board to be levied in the county and to be paid to the treasurer during the year." R. S. 497, sec. 433.

It is also provided by the Revised Statutes (sec. 457, p. 501), that "each county or township officer named in this and the succeeding articles shall, before entering upon the duties of his office, and within twenty days after receiving official notice of his election or appointment, or within twenty days after the commencement of the term for which he was elected, execute and deposit his official bond as provided by law." Among the officers named in the article referred to is the county treasurer. And it is claimed on the part of the appellant that he presented his official bond to the board within twenty days after the commencement of the term to which he had been elected, presumably with the intention of complying with the terms of the statute last cited.

But this last section, we contend, is not applicable to such case. By its terms it is made applicable to all, or nearly all, of the officers elected in a county, and was evidently intended to meet the case where no other special provision for the filing of the bond of the officer had been made. Section 433 by its terms provides specially as to the time of filing and the amount and other

requisites of the treasurer's bond, and should be construed to control the more general provisions of the other section. Besides, it cannot be construed as the legislative intent, that the treasurer, who has in his keeping the revenues of his county, should continue to hold the public moneys for the first twenty days of his term without any security being given.

It is claimed for the appellant that the penalty of his bond had been fixed by the board in the sum of $25,000, but of this the record furnishes no evidence; and it is therefore to be assumed that it was not fixed at all until placed at the sum of $50,000, by resolution of the board adopted March 31, 1883. Transcript, p. 22.

The presentation of his bond by the appellant on the 8th day of March to the commissioners could have no effect, for on that day the commissioners to whom it was presented had already on that day been removed from the offices which they had theretofore held. Laws of Mont. 1883, p. 140.

Besides, even if their removal had not taken place, they were not legally convened as a board of commissioners. They were required to convene at their regular March session on the first Monday of that month, which, in 1883, was on the 5th day of the month. R. S. 487, sec. 380.

It appears from the record (Transcript, p. 11) that, on the day appointed by law for their session, only one commissioner was present, and that no business was transacted, as was also the case on the day following. Not having met on the day required by law, their session lapsed, and they could not thereafter meet as a board for the transaction of business except in extra session after notice given, which, as the record shows, was not the case. Their proceedings had on the 7th and 8th days of that month were then, in any event, without authority of law, and void. The finding of the board on April 6, 1883, that the bond afterwards presented was insufficient, and their disapproval of the same, must, in this

proceeding, be taken to be correct. They certainly had jurisdiction to determine the matter, and, so far as appears from the record, their decision was correct. The appellant had then failed to furnish an official bond as required by law, and the case was one in which, under the statute, a vacancy existed. R. S. 523, sec. 554; *People* v. *Taylor*, 57 Cal. 620.

The county boards are authorized, and it is made their duty, to inspect the books and count the money in the hands of the treasurers of their respective counties. R. S. 419, sec. 84.

And it is provided that: "If at any time, upon the examination of the county treasuries, it shall appear to the county commissioners . . . that any funds of the county have been . . . diverted from their proper channel or in any way or manner expended, or taken from the treasury without authority of law, or that there has been culpable negligence by said treasurer . . . in the care or keeping of said public moneys, they are empowered, and it is made their duty, to forthwith take possession of the books, moneys and papers and other property of every kind and description belonging to the county which came into the possession of said treasurer by virtue of his office, and appoint another in his place." R. S. 420, sec. 88.

The proceedings of the board (Transcript, pp. 20–24) fully show what the findings of the board were, and what action was taken under the section last cited. The commissioners have jurisdiction to determine when any of the grounds of removal referred to exist, and, so far as the record in this case is concerned, there is nothing to impeach the correctness of the conclusion to which they came. If, as was found by them, the funds of the county to the amount named had been diverted from their proper channel and expended and taken from the treasury without authority of law, they were justified in removing the appellant from office.

That no opportunity for a hearing was given to the ap-

pellant before his removal from office, cannot affect the legality of the decision of the commissioners. That the appellant was present during the proceedings of the board referred to, appears from the record; but in such cases it is not required that he be heard before being removed, unless by statute a hearing is required to be given, which, in this case, is in no way provided for. *People* v. *Whitlock*, 92 N. Y. 191; *People* v. *Board Fire Com'rs*, 73 N. Y. 437.

To the objection made for the first time in appellant's brief, that, at the time the judgment appealed from was rendered, a term of the district court had commenced and was being held in Choteau county in the same judicial district, it may be said that there is nothing in our statutes or the organic act which in any way limits the time during which a term of the district court may be held or when it shall come to an end. That a term, appointed to be held and once commenced, does not terminate on the day appointed for the commencement of another term in the same district, has been before decided by the court. *Higley* v. *Gilmer*, 3 Mont. 90–95; *Mayne* v. *Creighton*, id. 108; *Roudebush* v. *Ray*, id. 188.

GALBRAITH, J. This is an appeal from an order of the court confirming the action of the respondent in removing the appellant from the office of treasurer of said county of Custer, and appointing another person to fill the vacancy. The first question presented relates to the right of the persons constituting the board of commissioners of Custer county, to hold and exercise their offices as such commissioners. An act of the legislative assembly, entitled " An act relative to the offices of county commissioners of Custer county," approved March, 1883, declared the offices of county commissioners of Custer county vacant, and appointed William Vangaskin, George M. Miles and Thomas J. Bryan to the said offices. It appears from the record in this case, that, at the time of

the acts complained of, they were holding said offices and acting therein as county commissioners. These persons were, therefore, at the time, holding and exercising their respective offices, at least, under color of right, and were then commissioners *de facto* of Custer county. Their title to the offices cannot be tried in this proceeding; it cannot be attacked collaterally. "An act of assembly, even if it be unconstitutional, is sufficient to give color of title; and an officer acting under it is an officer *de facto*. When a person is acting under the apparent authority of an act of assembly, his title to the office is not to be assailed collaterally." *Commonwealth* v. *McCowles*, 56 Pa. St. 436. Persons in the actual and unobstructed exercise of office must be held to be legal officers except in proceedings where their official character is the issue to be tried as against themselves. "The title to office can never be tried collaterally." *Johns* v. *People*, 25 Mich. 499; *Tracy* v. *Fuller*, 13 Mich. 527; *Douglas* v. *Wickwire*, 19 Conn. 488; *Druse* v. *Wheeler*, 22 Mich. 438: *Parks, Petitioner for Writ of Habeas Corpus*, 3 Mont. 426.

The board of county commissioners will, therefore, be presumed to have been at this time rightfully in the exercise of its lawful authority. The next question presented is, as to whether or not, by the removal of the appellant, the board exceeded its jurisdiction. The proceedings of the board of county commissioners, in relation to the removal of the appellant, were brought before the court by writ of *certiorari*. From the transcript of these proceedings, it appears that the appellant was the acting treasurer of Custer county, his term of office having commenced on the first Monday of March, 1883. R. S. 1879, p. 522, sec. 548. His bond as treasurer was not presented to the board until the 8th day of March, when a bond in the sum of $25,000 was presented. It does not appear that this bond was ever accepted or approved by the board. On the 24th day of March, he was notified

that the time of filing his official bond had expired, and that he had no bond on file. On the 31st day of March he presented a bond in the sum of $25,000, which was not accepted, and he was allowed five days to secure bondsmen, and the amount of the bond fixed at the sum of $50,000. On the 2d day of April, the clerk of the board was instructed to serve a written demand upon the appellant for the immediate return of $1,700 to the county treasury, found by the board to have been paid out as attorneys' fees, not in accordance with law; and he was granted three days in which to return the same. On the 6th day of April, the appellant presented a bond in the sum of $50,000. On the same day this bond, upon due examination, was found insufficient, and thereupon disapproved. On the same day the following preamble and resolution was adopted:

"Whereas, the board finds that Willis W. Carland, elected county treasurer of this county for the term of two years, commencing on the first Monday in March, 1883, did not, before entering upon the duties of said office for said term, execute to the board of commissioners of this county, or deposit either with said board or the chairman and clerk thereof, his official bond, with three or more sufficient sureties, either in such penal sum as had theretofore been directed by the board, or in a sum not less than double the amount of all money directed by the board to be levied in the county, and to be paid to such treasurer during the year;

"And whereas, the board did, at an extra session thereof, held on the 31st day of March, 1883, direct and require the said Carland, as such treasurer, to execute and deliver to the board, on or before the 5th day of April, 1883, his official bond, with sufficient sureties, in the penal sum of $50,000, for the approval of said board; and the said treasurer having on this day presented to the board an official bond, which is not approved, and the said treasurer having been at all times, since the

commencement of said term, without any official bond, as required by law; and whereas, upon an examination of the books of said treasurer, and an inspection and count of the funds in the hands of said Carland as county treasurer of said county, this day made by the board, the board finds that the said books do not show the actual condition of said office; and it further appearing to the board upon such count and inspection that certain of the funds of said county, to wit, the sum of $1,700, claimed to have been paid by said treasurer in February, 1883, to certain persons, as attorneys and counselors, for retainer fees, without any warrant having been drawn by the direction of the board of commissioners upon him therefor, have been diverted from their proper channel, and expended and taken from the treasury of said county, without authority of law; and that there has been culpable negligence by the said treasurer in the care and keeping of the said public moneys;

"Therefore, be it resolved by the board of county commissioners, that Willis W. Carland, county treasurer, be, and he is hereby, removed from his said office; and that the board do forthwith take possession of the books, papers and moneys, and other property of every kind and description, belonging to the county, which has come to the possession of said treasurer by virtue of his said office."

On the 10th of April, the board appointed one Stower to fill the vacancy.

In relation to the writ of *certiorari*, the law provides that, "if the return of the writ be defective, the court may order a further return to be made. When a full return has been made, the court shall proceed to hear the parties, or such of them as may attend for that purpose; and may thereupon give judgment, either affirming or annulling or modifying the proceedings below." R. S. 1879, p. 142, sec. 544. It is not claimed, neither does it appear, but that the return to the writ was a full return

of all the proceedings of the board relating to the alleged removal and appointment, and must be taken as conclusive and acted upon as true. *People ex rel. Sims* v. *Fire Commissioners,* 73 N. Y. 437.

The laws of the territory provide that "a county treasurer shall be elected in each county for the term of two years, and shall, before entering upon the discharge of his duties, execute to the board of county commissioners of his county a bond, with three or more sufficient sureties, to be approved by the board, and in such penal sum as they may direct, which bond, with the approval of the board indorsed thereon by their clerk, shall be filed in the office of the county clerk; and in case the board of commissioners shall not be in session in time for any county treasurer to present his bond for their approval, as above specified, or he shall be unable, from any cause, to present his bond at any regular meeting of the board, after due notice of his election, then it may be lawful for such treasurer to present his bond to the chairman and clerk of such board for their approval; and their approval indorsed thereon shall have the same effect as if done by the board of commissioners. And in such case, when the board shall not have fixed the penal sum of such bond, it shall not be less than double the amount of all moneys directed by the board to be levied in the county, and to be paid to the treasurer during the year." R. S. 1879, p. 497, sec. 433.

"Every office shall become vacant on the happening of any of the following events before the expiration of the term of such office: . . . His refusal or neglect to take the oath of office, or to execute his official bond, or to deposit such oath or bond within the time prescribed by law." R. S. 1879, p. 523, sec. 554.

"If, at any time, upon the examination of the county treasuries herein provided for, it shall appear to the county commissioners that the books of the county treasurers do not correspond with the amount of funds on

hand, or that the said books do not show the actual condition of said office and the funds on hand, or if it shall appear to them that any funds of the county have been embezzled, or diverted from their proper channel, or in any way or manner expended or taken from the treasury without authority of law, or that there is or has been any culpable negligence by said treasurer in the keeping of said books, or the care and keeping of the said public moneys, they are hereby empowered, and it is hereby made their duty, to forthwith take possession of the books, moneys and papers, and other property of every kind and description belonging to the county, or which came to the possession of said treasurer by virtue of his said office, and appoint another in his place." R. S. 1879, p. 420, sec. 88.

It does not appear from the foregoing proceedings that the bond of the appellant was ever fixed in the sum of $25,000, or that said sum was not less than double the amount of all moneys directed by the board to be levied in the county and to be paid to the treasurer during the year; and when this does not appear affirmatively, it will be presumed not to have been fixed at all till fixed in the sum of $50,000 on the 31st day of March. It does not appear that the bond in the sum of $25,000 was ever accepted by the board; and on the 31st of March it was refused. By the deposit of the bond required by the statute above cited, section 554, is meant the filing of the bond in the office of the county clerk, with the approval of the board indorsed thereon, or the approval of its chairman and clerk when the board had not been in session in time for its approval, or he had been unable from any cause to present it at any regular meeting of the board. The bond never having been approved, there could not have been such a filing with the county clerk as the law requires. And, further, it does not appear that it was ever filed with the county clerk at all. The bond for $50,000, presented on the 6th of April, was dis-

approved by the board. There never was, therefore, a sufficient official bond executed by the appellant or deposited with the county clerk as required by law. In such a case the board of county commissioners had full power to declare a vacancy in the office of treasurer.

From the proceedings of the board it also appears that the books did not show the actual condition of the office of the treasurer, and that upon a count and inspection, certain funds of the county, viz., $1,700 claimed to have been paid out to attorneys as retainer fees, without any warrant having been drawn upon him by direction of the board, have been diverted from their proper channel and expended and taken from the treasury of said county without authority of law, and that there has been culpable negligence by the said treasurer in the care and keeping of the said public moneys. The above state of facts not only empowered but made it the duty of the board of commissioners to forthwith take possession of the books, moneys and papers, and other property of every kind and description belonging to the county, or which came to the possession of said treasurer by virtue of his said office, and appoint another in his place. Where the governor has power to remove an officer for neglect of duty, he is the sole judge whether the duty has been neglected. Cooley on the Constitution, 4th ed. 138, n. 2.

We are, therefore, of opinion that the settling of the treasurer's accounts, and finding he had not settled and accounted for moneys of the county, as required by law, and that he had been, and then was, in arrears with the county, and removing him from office, was not judicial; and we have no doubt the general assembly had ample power to authorize the board to act, and it is legal and valid. Walker, Justice, in *Donahue* v. *County of Will*, 100 Ill. 94.

The mere presentation of the bond for $25,000, on the 8th of March, was not a compliance with the law in re-

lation to the execution and deposit of the bond with the county clerk; even if it was, the proceedings of the board show that there was not, upon that day, a legal session of the board. The law required that the commissioners should convene at their regular March session on the first Monday of that month. On that day but one commissioner was present, and no business was transacted. The same was the case on the day following. The session, therefore, had lapsed; and no notice having been given of an extra session, they were not in lawful session upon the 8th of March, when the bond was presented. R. S. 487, sec. 380.

It also appears that upon the 8th day of March the then incumbents of the offices of county commissioners of Custer county had been removed and other persons appointed to fill the vacancies. 13th Session Laws, 140.

It is claimed that, by virtue of section 457, R. S. p. 501, the appellant had twenty days in which to execute and deposit his official bond, and that the presentation upon the 8th of March was a compliance with its provisions. We have said that this presentation to the board was not a compliance with the provisions of said section 554. We do not, however, think that said section 457 applies to the treasurer. This section is as follows: " Each county or township officer named in this and succeeding article, shall, before entering upon the duties of his office, and within twenty days after receiving official notice of his election or appointment, or within twenty days after the commencement of the term for which he was elected, execute and deposit his official bond, as provided by law." The county treasurer is not named in this article. This is a statute whose provisions apply to all, or nearly all, of the officers of a county and townships, and is, therefore, general in its character. Section 433 relates specially to the county treasurer. It will, therefore, control the more general provisions of section 457.

Again, when we consider the provisions of section 433,

in connection with the view that it would be opposed to public policy that the treasurer could be twenty days in office without a bond, we do not think that the legislature intended section 457 to apply to the county treasurer. It was not necessary that the appellant should have been notified, or that he should have had an opportunity to be heard before his removal. The statute makes no provision in such cases for a hearing before removal. The record discloses, also, that the appellant was present at the proceedings of the board. *People* v. *Whitlock,* 92 N. Y. 191; *People* v. *Fire Commissioners,* 73 N. Y. 457.

It is claimed that the order of the court confirming the action of the board was illegal, because upon the 18th of April, when this order was made in the district court of Custer county, a term of the district court was being held in Choteau county in the same judicial district. The cases cited, so far as we have examined them, do not sustain this position when applied to the courts of this territory. They apply to cases such as where there was a statute fixing the times when a term should end, and the cause was tried after that time had expired; and when a term of court was fixed to be held in another county. *Bates* v. *Gage,* 40 Cal. 183; *Gregg* v. *Cooke,* 7 Peck (Tenn.), 82. Or to a case where the judge of one district, when in another district, composed of but one county, while the judge of the latter district is presiding over and holding his own court, makes an order in relation to a matter pending in the said court. *People* v. *O'Neil,* 47 Cal. 109.

*Gregg* v. *Cooke, supra,* was overruled in *Venable* v. *White,* 39 Head (Tenn.), 582, where it was held that the judgments and decrees of a judge regularly in office are valid when he held his court under color of a law that turned out to be repealed or invalid. The court in that case, by Wright, J., says: " There can be no doubt, whatever, upon reason and authority, that a judgment given by a judge *de facto,* sitting and holding a court at the

proper time and place, is as valid and free of error as a judgment pronounced by a judge rightfully in office."

· We know of no law, and there is no order of the supreme court of this territory, fixing the time when a term of court shall terminate. When a court is held in any county of the territory by an order of the supreme court, by any of the judges thereof, their proceedings are regular and valid. But however this may be, if the proceedings of either of the courts were invalid, it would be those in Choteau county and not in Custer county, where the judge of the third judicial district presided. "Where, by mistake, a law requires court to be held in two places in the circuit on the same day, it is in the discretion of the judge to select which one he will hold, and under this election the proceedings will be valid." Wells on Juris. of Courts, sec. 134. By holding the court in Custer county, the judge of the third judicial district will be presumed to have elected to hold that court.

The order confirming the action of the board of county commissioners is affirmed, with costs.

*Judgment affirmed.*