[Criminal No. 797.   Filed May 4, 1934.]

[32 Pac. (2d) 799.]

STATE, Appellant, v. HENRY O. JAASTAD, H. A. DALTON, W. E. GAMBRELL, CHARLES H. KROEGER, J. E. NIEMANN, L. ROCA, FRED STEGER and GEORGE BUTLER, Respondents.

Mr. Arthur T. La Prade, Attorney General, Mr. John Francis Connor, Assistant Attorney General, and Mr. Clarence E. Houston, County Attorney, for the State.

Mr. Thomas J. Elliott, for Respondents.

Mr. Emil Wachtel, *Amicus Curiae.*

LOCKWOOD, J.—This is an appeal by the state from a judgment of the superior court of Pima county sustaining a demurrer to a criminal information filed against the mayor, the members of the city council, and the city manager of Tucson, charging them with a violation of chapter 12 of the Session Laws of 1933, commonly known as the "minimum wage law."

The general question as to the constitutionality of the law has been determined by us in the case of *State* v. *Anklam et al., ante,* p. 362, 31 Pac. (2d) 888, just decided. Therein we held chapter 12, *supra,* to be constitutional, so far as its provision for a minimum wage to be paid for public work was concerned, but we especially reserved the question of its applicability to cities with home rule charters, adopted under sections 2 and 3, article 13, of the Constitution.

In the present case, therefore, it is not necessary to discuss the general question of the power of the Legislature to adopt minimum wage laws governing the employment of labor by the state and its political subdivisions. There are, however, two questions not raised in the case cited which it is ·necessary we should consider in passing upon the present case. The first is the contention that chapter 12, *supra,* was repealed by chapter 71, Session Laws of 1933. Chapter 12 was approved by the Governor on February 17, 1933, as an emergency act and therefore took effect immediately. It contained the following provision in regard to wages:

"Sec. 1350. Hours of labor on public work; wages. Eight hours, and no more, shall constitute a lawful day's work for all persons doing manual or mechanical labor employed by or on behalf of the state, or of any of its political subdivisions, except in an extraordinary emergency, in time of war, or for the protection of property or human life; in such cases the persons working to exceed eight hours each day shall be paid on the basis of eight hours constituting a day's work. Not less than the minimum per diem wages fixed by the state highway commission for manual or mechanical labor performed for said commission or for contractors performing work under contract with said commission, shall be paid to persons doing manual or mechanical labor so employed by or on behalf of the state or of any of its political subdivisions. Persons doing manual or mechanical

labor employed by contractors or sub-contractors in the execution of any contract with the state, or with any of its political subdivisions, shall be deemed to be employed by or on behalf of the state, or of such political subdivision thereof.'' Section 1.

Thereafter, and on March 17, 1933, chapter 71 was approved, and being also an emergency act took effect on that day. Section 1 of the chapter reads as follows:

''Section 1. Wages on public work; applicable to whom. Every contract in excess of one thousand dollars in amount, to which the state of Arizona, or any political subdivision thereof, is a party, which requires or involves the employment of laborers or mechanics in the construction, alteration or repair of any public buildings, or other improvements of the state of Arizona or any political subdivision thereof, shall contain a provision to the effect that the rate of wages for all laborers and mechanics employed by the contractor or any subcontractor on such public buildings or improvements, shall be not less than the prevailing rate of wages for work of a similar nature in the county, city, town, village, or other civic division of the state in which the public building or improvement is located, provided that for the purpose of said act every person, while performing work of a laborer or mechanic on the public work covered by such contract, is to be regarded as employed as a laborer or mechanic by the contractor or subcontractor, regardless of any contractual relationship alleged to exist between the contractor or subcontractor and such laborer or mechanic, and a provision that in case any dispute arises as to what constitutes the prevailing rate of wages for work of a similar nature applicable to the contract, which cannot be adjusted by the contracting state agency, the matter shall be referred to the Arizona industrial commission for determination, and its decision thereon shall be conclusive on all parties to the contract. Laborers, workmen and mechanics employed by contractors or subcontractors in the execution of any contract or contracts for

public works within the state of Arizona, to which the state or any of its political subdivisions is a party, shall be deemed to be employed on public works."

It is contended that the two acts are in conflict, and that chapter 71, being approved a month later than chapter 12, *supra,* repeals the latter chapter, so far as the conflict exists at least. It is the general rule that where statutes are *in pari materia* and the later one does not expressly repeal the former, the two are to be construed so as to give effect to each, if possible. *Gideon* v. *St. Charles,* 16 Ariz. 435, 146 Pac. 925; 25 R. C. L., p. 1060. And this applies with peculiar force when the statutes are adopted at the same session of the legislature. *Blackwell* v. *First Nat. Bank,* 10 N. M. 555, 63 Pac. 43. It is also the rule that when a later statute covers only a particular part of a general subject it shall be considered as an exception to the general statute, and apply only to the cases specifically mentioned therein. *Carland* v. *Custer County,* 5 Mont. 579, 6 Pac. 24; *Hawkins* v. *Bare & Carter,* 63 W. Va. 431, 60 S. E. 391; *Met. Dist. R. Co.* v. *Sharpe,* 50 L. J. Q. B. 16. It will be observed that chapter 12 is a general statute, covering all kinds of mechanical and manual labor on behalf of the state or its subdivisions. On examining chapter 71, it will appear that the provisions therein affecting wages are especially limited to "laborers or mechanics in the construction, alteration or repair of any public buildings or other improvements" where the work is done by contract and the price exceeds $1,000.

Applying the two rules of law above referred to, we are of the opinion that there is no inconsistency in the two acts and whenever public work is done by contract, and the contract price is over $1,000, the wages paid are regulated by the provisions of chapter 71, *supra,* while for all other classes of public work chapter 12, *supra,* applies.

The only question remaining for determination is whether chapter 12 applies to work of the character described in the information, when it is performed in and for a municipality organized under the constitutional provisions above referred to.

In the case of *Clayton* v. *State,* 38 Ariz. 135, 297 Pac. 1037, 1041, Id., 38 Ariz. 466, 300 Pac. 1010, we had under consideration the power of the state legislature over cities of the class in question. Therein we stated:

''The general powers conferred on the city by the freeholders' charter are those concerning municipal or local affairs. See cases above cited. The city does not assume under its charter all the powers that the state may exercise within its limits, but only powers incident to a city government. 'Rightful subjects' of legislation thereunder are therefore local or municipal concerns of the city. Under this grant of power the city cannot enter the field of general legislation, but must confine itself to the making of by-laws for its local government. In the latter field, under the Constitution so long as the legislation is in harmony with that instrument and the laws of the state it is valid and, under the provisions of section 398, Revised Code of 1928, prevails over state legislation conflicting therewith. If, however, a city by-law is not about a matter of municipal concern but a matter of general statewide concern, it would not be a 'rightful subject' of legislation, as defined by the general grant of power in the charter. The police power inheres in the state and not in its municipalities. The latter are agencies of the state and exercise police and other powers only by grant given either directly or by necessary implication. We think the broad grant of powers contained in sections 1 and 2, chapter IV of the Charter, should be, and was intended to be, limited to by-laws concerning purely municipal affairs. . . .

''Where the subject is one of local interest or concern, or where though not of local concern the charter or legislation confers on the city express power to

legislate thereon, both jurisdictions may legislate on the same subject. Where, however, the subject is of statewide concern, and the Legislature has appropriated the field and declared the rule, its declaration is binding throughout the state."

And this general rule is upheld by practically all the courts which have considered similar questions.

The question then is, whether chapter 12, *supra,* when applied to the facts set forth in the information, is dealing with purely municipal affairs or with general matters of state-wide concern. Minimum wage laws, increasingly prevalent in recent years, are obviously, and generally avowedly, based upon the theory that it is a matter of general and public concern that wage-earners should not have the amount of their earnings determined solely by intense competition under the law of supply and demand, which, as history has shown, frequently results in a general deterioration of the physical and moral stamina of a nation, and that human labor is not a commodity in the sense that material products are, but is something higher and different, and it therefore follows that the workers are not to be considered as mere machines to be run at high speed with the least possible expense, and then scrapped as their usefulness is exhausted, but are an integral and vital part of society itself, and society must, for its own sake, if not for theirs, see that they are given the protection which they cannot unaided secure for themselves. Such being the case, the more enlightened legislatures have determined that the state will, as a matter of public policy, fix a wage below which it will not go, and the National Industrial Recovery Act (48 Stat. 195) is endeavoring, by one means or another, to extend the principle to private business. That legislation of this kind is in the highest degree one of general public concern, and not merely of local or municipal

interest, is plain. It is true that several courts have held, under varying circumstances, that minimum wage laws adopted by a legislature would not apply to the so-called "self governing" cities. *City of Pasadena* v. *Charleville,* 215 Cal. 384, 10 Pac. (2d) 745; *City of Lexington* v. *Thompson,* 113 Ky. 540, 68 S. W. 477, 101 Am. St. Rep. 361, 57 L. R. A. 775; *Simpson* v. *Paddock,* 195 Mich. 581, 161 N. W. 898. On examining these cases it will be perceived that these courts have, as we believe, fallen into error by looking at the case from the standpoint of the particular physical result to be achieved by the labor performed, and not at the general objective the legislature desired to reach. Our legislature, in enacting chapter 12, *supra,* undoubtedly had under consideration the general public policy of a minimum wage for all mechanical and manual labor employed by the state or its political subdivisions, and not the particular kind of work to be done, or the physical result to be reached thereby. We are therefore of the opinion that since the principle of the minimum wage law is obviously one of general and public concern and not of merely local interest, chapter 12 applies to the self-governing cities of the state. For the foregoing reasons the information stated a public offense. There is a stipulation of fact which shows that one member of the council did all in his power to comply with the law. Of course, if this appears at a trial of the case, he should be acquitted.

The judgment of the superior court of Pima county is reversed, with instructions to overrule the demurrer to the information and for further proceedings in conformity with the principles laid down herein.

ROSS, C. J., and McALISTER, J., concur.