[Civil No. 3639.   Filed December 9, 1935.]

[52 Pac. (2d) 1175.]

CITY OF PHOENIX, a Municipal Corporation, Appellant, v. O. P. DRINKWATER, Appellee.

Mr. F. H. Lyman, for Appellant.

Mrs. Pearl H. Collier, and Mr. J. S. Wheeler, for Appellee.

Messrs. Dougherty & Dougherty, *Amicus Curiae.*

LOCKWOOD, C. J.—City of Phoenix, a municipal corporation hereinafter called defendant, has appealed from a judgment in favor of O. P. Drinkwater, hereinafter called plaintiff, upon two claims for wages due from defendant to Jim Garcia and Jesus Salazar, and assigned by them to plaintiff.

The questions before us are of law only, as the case was heard upon an agreed statement of facts which is in substance as follows: Garcia had been employed by defendant in its street railway department as a common laborer from the 15th of April, 1933, to the 23d of May, 1934. During all of this time chapter 12 of the regular session of the Eleventh Legislature, commonly known as the minimum wage law, was in force, and, under its provisions, Garcia was entitled to be paid at the rate of $4 per day, but as a matter of fact, he received only $3.20 per day. He accepted the payment at the lesser rate up to the time of his leaving the employ of the city on May 23, 1934. On August 10th of that year he presented a written demand for the difference between what he had been paid at the rate of $3.20 per day, and what he should have been paid at the rate of $4 per day, being $277.60, but, it being refused by defendant, the claim was assigned to plaintiff, who filed this suit on October 24, 1934. The facts in regard to the Salazar claim are the same, except that his employment extended from the 15th of May, 1933, to the 23d of May, 1934, and the amount which he claimed, being the difference between what he has been paid and what

would have been due him at the rate of $4 per day, is $258.80. The court found in favor of plaintiff for the full amount sued for, and defendant has appealed.

There are six assignments of error, presenting three questions of law, which we state as follows:

First, Is the action governed, so far as the statute of limitations is concerned, by subdivision 3, section 2058, Revised Code 1928, which reads as follows:

"One year limitation. There shall be commenced and prosecuted within one year after the cause of action shall have accrued, and not afterward, the following actions: . . . upon a liability created by statute, other than a penalty of forfeiture,"
or subdivision 1, section 2060, Revised Code 1928, which is in the following language:

"Three year limitations. There shall be commenced and prosecuted within three years after the cause of action shall have accrued, and not afterward, the following actions: 1. Debt where the indebtedness is not evidenced by a contract in writing."

Second, since the minimum wage law provides a penalty of fine and imprisonment for those who violate its provisions, but does not expressly give a right of action to the laborer to recover the difference between what has been paid him and what he should have received, may he maintain a civil action of this nature?

Third, is the minimum wage law applicable to self-governing cities of the class provided for in article 13, section 2, of the Constitution?

The Arizona Municipal League asked for and received permission to file a brief as *amicus curiae*. In such brief, in addition to arguing the questions raised by the assignments of error presented by defendant, it has attempted to assign other errors and to argue them. This is not within the rights of an *amicus curiae,* and we, therefore, consider the brief of the League only so far as it discusses ques-

tions raised properly by defendant's assignments of error. *Farmers' Union Ditch Co.* v. *Rio Grande Canal Co.,* 37 Colo. 512, 86 Pac. 1042.

We shall discuss these questions in their inverse order. So far as the third is concerned, it has been specifically considered and disposed of by us in case of *State* v. *Jaastad,* 43 Ariz. 458, 32 Pac. (2d) 799, 801, and we see no reason for departing from the rule laid down therein, that self-governing cities are subject to the minimum wage law in the same manner and to the same extent as are other municipal corporations in Arizona. The second question is of somewhat greater difficulty. We have been cited to no cases where it has been directly raised, discussed, and determined under a minimum wage law substantially the same as ours. It is true that in the state of Washington it has been expressly held that a laborer may recover the unpaid wages, but the Washington statute specifically provides for such a recovery. *Larsen* v. *Rice,* 100 Wash. 642, 171 Pac. 1037. In the cases of *Campbell* v. *City of New York,* 128 Misc. 382, 219 N. Y. Supp. 131, and *Austin* v. *City of New York,* 258 N. Y. 113, 179 N. E. 313, recovery was allowed under a statute which, like ours, fixes a criminal penalty for its violation, but does not expressly give a civil action for recovery of the wages. But in neither of these New York cases was the question which we have under consideration determined nor, so far as we can ascertain, even raised. Counsel for defendant and for *amicus curiae* have called our attention to the general rule that where a statute creates a right and prescribes a remedy, the remedy prescribed is exclusive, and must be strictly pursued. *Fourth Nat. Bank* v. *Francklyn,* 120 U. S. 747, 7 Sup. Ct. 757, 30 L. Ed. 825; *City of Faribault* v. *Misener,* 20 Minn. 396 (Gil. 347). They have also cited *Territory* v. *Kenney,* 11 Ariz. 353, 95 Pac. 93,

94, as being somewhat analogous in its facts to the present case. There is no doubt that the general rule is as contended for by defendant. This is particularly true in strictly penal statutes, when an act is made a crime, and a penalty is attached thereto; the presumption being that the legislature meant such penalty to be the exclusive one for the commission of the forbidden act. But is this necessarily true when it clearly appears that the purpose of the statute is not only to prohibit certain acts on the part of those who may be punished for violating its terms, but also to confer certain new substantive rights upon other parties? If the strict rule as contended for be applied, we would have the situation in this case of the legislature giving a right with one hand, and denying a remedy for an invasion thereof with the other. It is also a general rule that, in determining the meaning of statutes, we must consider both the evil to be remedied and the result which the legislature desires to reach. We have described the purpose of the minimum wage law in *State* v. *Jaastad, supra,* as follows:

"Minimum wage laws, increasingly prevalent in recent years, are obviously, and generally avowedly, based upon the theory that it is a matter of general and public concern that wage-earners should not have the amount of their earnings determined solely by intense competition under the law of supply and demand, which, as history has shown, frequently results in a general deterioration of the physical and moral stamina of a nation, and that human labor is not a commodity in the sense that material products are, but is something higher and different, and it therefore follows that the workers are not to be considered as mere machines to be run at high speed with the least possible expense, and then scrapped as their usefulness is exhausted, but are an integral and vital part of society itself, and society must, for its own sake, if not for theirs, see that they are given the

protection which they cannot unaided secure for themselves. Such being the case, the more enlightened Legislatures have determined that the state will, as a matter of public policy, fix a wage below which it will not go, and the National Industrial Recovery Act (48 Stat. 195) is endeavoring, by one means or another, to extend the principle to private business.''

The statute, it will be seen, has a two-fold purpose. One is to secure to the individual workman a minimum living wage, fixed by law, and the other is to penalize the employer who fails to pay that wage. With both purposes before us, we certainly think that it would be defeating the intent of the legislature, so far as the first is concerned, if we were to hold that the very ones whom the law was intended to protect were helpless to secure that protection, and must satisfy themselves with knowing that somebody had gone to jail or paid a fine for violating the law. Such would, indeed, be a Pyrrhic victory for the workman, consoling perhaps to his feelings, but of very little value in giving to him what the law says he has earned and is due him. The thief may be compelled to make restitution to those who have lost by his act, if he is financially responsible, in addition to suffering the penalty imposed by the state. The estate of a murderer is liable civilly for the monetary loss he has caused to the family of his victim, even though he may have at the fiat of the state passed into another and, we hope, a better life. Why should this not be true with the minimum wage law? We think we should apply to such statute the principle stated in *Pollard* v. *Bailey,* 20 Wall. (87 U. S.) 520, 527, 22 L. Ed. 376, as follows:

"A general liability created by statute without a remedy may be enforced by an appropriate common-law action. But where the provision for the liabil-

ity is coupled with a provision for a special remedy, that remedy, and that alone, must be employed.''

In the minimum wage law we think there are two liabilities on the part of the employer; one to the state, under the sanction of the penal provision of the law, and the other to the injured workman, which may be enforced by the common-law action. Nor is there anything in *Territory* v. *Kenney, supra,* which is contrary to this conclusion. In that case the court says:

"The law before us does not give rise to an obligation, but offers an opportunity of which one desirous of engaging in the licensed business may avail himself. Of it, however, he cannot be compelled to avail himself, except in so far as such compulsion may be effected by criminal prosecution. The fee is to be paid for the license. When a license is not obtained, there cannot be implied an obligation to pay for a license, merely by reason of the unlawful engaging in the business.''

By the terms of the minimum wage law the obligation to pay the workman exists by the mere fact of his employment, while under the licensing law no fee was due unless and until the license issued. We hold, therefore, in accord with the rule followed, though not expressly declared by the New York courts in the cases cited, that in view of the dual purposes of the law, it impliedly carries with it the common-law remedy which alone can insure that the class for whose aid it was adopted may be adequately protected in the right given by the law.

This brings us to the question of which of the statutes of limitations above cited apply to cases of this nature. It is contended on behalf of plaintiff that the relation between his assignors and defendant was purely contractual in its nature, and that, although this contract impliedly carries with it a provi-

sion imposed by the statute in derogation of its express terms, the obligation relied on by plaintiff is nevertheless a debt arising out of a contract, so that the 3-year statute applies. It is argued with great vehemence by defendant, on the other hand, that the particular liability on which plaintiff bases his action is created by the statute and by that only, and if the statute be eliminated the whole action must fail to the uttermost farthing. As with the previous question, we have been cited to no cases under a minimum wage law wherein the precise issue has been determined or even considered. Defendant calls our attention to a number of cases decided by this court wherein the one-year statute was held to apply, such as *Long* v. *Schutz*, 26 Ariz. 432, 226 Pac. 529; *Cowden* v. *Williams*, 32 Ariz. 407, 259 Pac. 670, 55 A. L. R. 1059; *Burgess* v. *Apache County*, 20 Ariz. 140, 177 Pac. 269; *Yuma County* v. *Hodges*, 20 Ariz. 142, 177 Pac. 270; *Santa Cruz County* v. *McKnight*, 20 Ariz. 103, 177 Pac. 256. Plaintiff argues, however, that the last three cases are not in point for the reason that they apply to public officers, and not to mere employees, and that the relation between the state and its duly appointed or elective officers is universally held not to be contractual in its nature, while the opposite rule is true in regard to mere employees, and that in the two cases first cited the liability which it was sought to enforce was in no way contractual or common law in its nature, but one created directly by the Constitution and the statutes.

After a careful consideration of the question from every angle, we are of the opinion that the position of the defendant is the sounder as a matter of reason and common sense. It is true that the *relation* existing between the defendant and plaintiff's assignors was contractual in its nature, being that of employer

and employee, but the *liability* upon which plaintiff sues was created solely by the terms of the statute and cannot exist without it, being, therefore, statutory in its nature. The language of subdivision 3, section 2058, applies the one-year period of limitation to a "liability" and not a relationship. We hold, therefore, that since the particular "liability" upon which this suit is based was created by statute, the one-year statute of limitations applies thereto.

For the foregoing reasons, the judgment of the superior court is reversed, and the case remanded, with instructions to render judgment in favor of plaintiff for so much of his claim as falls within the one-year statute of limitations.

McALISTER and ROSS, JJ., concur.