FRANK P. FILARDO, Appellant, *v.* FOLEY BROS., INC., et al., Respondents.

Argued November 17, 1947; decided March 11, 1948.

*Chester A. Lessler* for appellant. I. Plaintiff has a right of action against defendants for overtime pay and may sue for the same. (*United States* v. *Martin,* 94 U. S. 400; *United States* v. *Post,* 148 U. S. 125; *Coleman* v. *United States,* 81 F. 824; *Timmonds* v. *United States,* 84 F. 933; *United States* v. *Moses,* 126 F. 58; *Lawrence* v. *Fox,* 20 N. Y. 268; *Seaver* v. *Ransom,* 224 N. Y. 233; *Strong* v. *American Fence Constr. Co.,* 245 N. Y. 48; *Pond* v. *New Rochelle Water Co.,* 183 N. Y. 330; *Wilson* v. *Costich Co.,* 231 App. Div. 346; *Gulla* v. *Barton,* 164 App. Div. 293.) II. The statute applies extraterritorially on public contracts outside the territorial limits of the United States and its possessions. (1905 Atty. Gen. 441.)

*John F. X. McGohey, United States Attorney for Southern District of New York (Harold J. Raby* of counsel), for respondents. I. No cause of action is stated under title 40, sections 321 through 326, of the United States Code. (*United States* v. *Martin,* 94 U. S. 400; *Timmonds* v. *United States,* 84 F. 933; *Coleman* v. *United States,* 81 F. 824; *United States* v. *Moses,* 126 F. 58; *Swisher* v. *United States,* 57 Ct. of Claims 123; *Greenstein* v. *Pan American Airways,* 185 Misc. 429.) II. Plaintiff cannot recover as a beneficiary of the prime contract under the rule of *Lawrence* v. *Fox.* (*Greenstein* v. *Pan American Airways,* 185 Misc. 429.) III. The Eight-Hour Law has no extraterritorial application.

FULD, J. In 1941, defendants entered into a cost-plus contract with the United States Government to construct roads, buildings and bases in the Near East in connection with our military effort. By a clause in that contract, defendants agreed to " obey and abide by all applicable laws * * * of the United States." In effect at that time was the Federal Eight-Hour Law (U. S. Code, tit. 40, §§ 321–326), which, in general, after prohibiting work by laborers on government jobs in excess of eight hours a day (§§ 324, 325), went on to provide that such overtime work was to be " permitted upon compensation " for all hours over

eight at not less than one and one-half times the employee's basic rate of pay (§§ 325a, 326).

Some months after the execution of their agreement with the government, defendants, by a contract made in this country, hired plaintiff, a citizen of the United States, as a cook, at a wage of $60 a week, on their jobs in Iran and Iraq. Plaintiff went to those countries and there, for seventy-four weeks, during 1942 and 1943, labored frequently for more than eight hours a day. He requested payment for the overtime hours and, when his demands were rejected, brought this action, asserting that he was entitled to overtime pay at the rate specified in the Eight-Hour Law.

The jury found that plaintiff had worked 1,172 overtime hours and returned a verdict of $2,492.36, with interest. The Appellate Division reversed the judgment and dismissed the complaint upon the ground that the Federal statute did not give an employee the right to recover compensation for work in excess of eight hours a day even though it proscribed a work day longer than eight hours and rendered employers liable to criminal prosecution if that limit were exceeded. With that determination we disagree; in our opinion, plaintiff — whose status as a '' laborer '' within the compass of the statute is not challenged — may recover either upon a cause of action afforded by the Eight-Hour Law or as a third party beneficiary of the primary contract between defendants and the Federal Government.

Since both of plaintiff's grounds for recovery turn upon the language and purpose of the Eight-Hour Law, it will be useful at the outset to examine its history. It evolved from a statute, first enacted in 1868, which merely declared '' That eight hours shall constitute a day's work for all laborers, workmen, and mechanics now employed, or who may be hereafter employed, by or on behalf of the government of the United States '' (15 U. S. Stat. 77, ch. 72). As re-enacted in 1892 (27 U. S. Stat. 340, ch. 352), the statute added a criminal sanction, making it a misdemeanor for any agent or officer of the government or any government contractor intentionally to violate the eight-hour limit (present § 322). Amendments in 1912 supplied provisions which today appear as sections 324 and 325 of title 40 of the United States Code. As noted above, in effect they demanded that, with

certain specified exceptions, every contract for public works, made by or for the United States, contain a provision that no laborer or mechanic be required or permitted to work more than eight hours a day and that " every such contract " contain a stipulation for a penalty of $5 a day in case the eight-hour limit be violated (§ 324). In emergencies, however, an employer was privileged to have men work beyond that limit without incurring penalties (§ 325). In 1917, our entrance in the first World War impending, Congress voted the President powers to suspend the eight-hour limit on work covered by government contracts in " case of national emergency ", " *Provided* " that premium pay at not less than one and one-half times the regular rate was given employees who worked longer than the basic eight-hour day upon such contracts (39 U. S. Stat. 1192, ch. 180), and those powers are continued in section 326 of the present statute.

In June, 1940 — after the outbreak of the second World War — when it once again became necessary to accelerate production and expedite defense activities, Congress suspended the eight-hour limitation in defense work (U. S. Code, tit. 50, Appendix, § 1155, subd. [b]). A few months later, in September, 1940, the suspending legislation was superseded by the enactment of section 325a (U. S. Code, tit. 40, § 325a), and it is upon its construction that decision herein primarily depends. The new provision explicitly recited that " work in excess of eight hours per day shall be permitted upon compensation for all hours worked in excess of eight hours per day at not less than one and one-half times the basic rate of pay." With that amendment, the Eight-Hour Law assumed its present content. A government contractor was again subject to prosecution for a misdemeanor (§ 322) and to payment of liquidated penalties of $5 a day (§ 324) if he employed laborers for longer than eight hours a day.

While the statute does not in so many words grant to the employee a cause of action if such compensation is not received, it is settled that such remedial legislation is to be given a liberal construction to effectuate its purpose and aim. (See *National Labor Relations Bd.* v. *Hearst Publications,* 322 U. S. 111, 129; *South Chicago Coal & Dock Co.* v. *Bassett,* 309 U. S. 251,

259–260; *Warner* v. *Goltra*, 293 U. S. 155, 158; *Walling* v. *Patton-Tulley Transp. Co.*, 134 F. 2d 945.) The statute in terms provides that overtime work was to be permitted " *upon compensation* " at not less than time and one-half for such overtime. (Emphasis supplied.) Manifestly, that language must be read as an affirmative direction that compensation for overtime work shall be paid and may be collected whenever the hours of work exceed the statutory limit. Any doubt on this score is dispelled when one glances at the language of section 326 — not here involved — which applies when the President suspends the operation of the eight-hour limit; it permits such suspension " *Provided,* That the wages of persons employed upon such contracts shall be computed on a basic day rate of eight hours work, with overtime rates to be paid for at not less than time and one-half ". That is plainly a mandate to pay extra compensation for overtime work during the period of the law's suspension and, since Congress could not have intended to deny overtime pay for work performed during the time the law is in effect, while granting it when it is suspended, both sections — 325a and 326 — should be read alike. So read, the statute differs little from the Letter Carriers Act (25 U. S. Stat. 157, ch. 308), which has been interpreted to bestow a right to sue upon employees within its coverage. (See *United States* v. *Post*, 148 U. S. 124.)

There can be little question that the statute was passed for the benefit and protection of the laborer and, in such a case, a party who has " suffered from a disregard and violation of the duty [imposed by statute] has a cause of action for his damages against the one who has disregarded his duty ", even though the statute does not explicitly provide for such a remedy. (*Abounader* v. *Strohmeyer & Arpe Co.*, 243 N. Y. 458, 465; see, also, *Bruce's Juices* v. *American Can Co.*, 330 U. S. 743, 751; *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, 315 U. S. 447, 456–458.) With the beneficial purposes of the statute so manifest, if plaintiff may not sue to enforce it, the benefits accorded would indeed be empty and illusory. He would find himself in the position of having been given a benefit he is unable to enjoy, a right he is helpless to enforce.

Analogously, State minimum wage laws have been interpreted to permit suit by an aggrieved employee to recover the wages

therein specified, though the statute merely made payment at less than the specified rate criminally punishable and did not expressly grant a right of civil action. (See *McNulty* v. *City of New York*, 238 N. Y. 29; *City of Phoenix* v. *Drinkwater*, 46 Ariz. 470; cf. *Austin* v. *City of New York*, 258 N. Y. 113; *Campbell* v. *City of New York*, 128 Misc. 382.) In the *Drinkwater* case (*supra*, p. 474), the Arizona court, observing that in determining the meaning of a statute, courts must consider " both the evil to be remedied and the result which the legislature desires to reach ", went on to say (p. 475): " The statute, it will be seen, has a two-fold purpose. One is to secure to the individual workman a minimum living wage, fixed by law, and the other is to penalize the employer who fails to pay that wage. With both purposes before us, we certainly think that it would be defeating the intent of the legislature, so far as the first is concerned, if we were to hold that the very ones whom the law was intended to protect were helpless to secure that protection, and must satisfy themselves with knowing that somebody had gone to jail or paid a fine for violating the law. Such would, indeed, be a Pyrrhic victory for the workman, consoling perhaps to his feelings, but of very little value in giving to him what the law says he has earned and is due him." And so here. If we recognize — as we believe we must — that the Eight-Hour Law sought to elevate labor standards in employment on public works by requiring the employer to pay extra compensation for hours in excess of eight (see *Walling* v. *Patton-Tulley Transp. Co., supra,* p. 949), it would be both unreasonable and unjust to say that that laborer has no claim for such overtime pay. We conclude that such could not have been the legislative purpose.

Nor do we deem it of controlling significance that this statute is silent, while another, the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 216, subd. [b]), is explicit in declaring that employers who violate that act — in not paying the prescribed minimum wage or overtime compensation — shall be civilly liable to the injured employees. That act entitles the employee not only to damages suffered — the specified minimum wage or overtime pay — but also to an additional sum as liquidated damages. Obviously, in such a case, the employee would be in no position

to claim such double damages without explicit statutory authorization.

It is urged that the interpretation which we place on the Eight-Hour Law is precluded by *United States* v. *Martin* (94 U. S. 400). Decision in that case, and in the others which followed it, was rendered at a time when the statute simply announced a desirable work standard and made no mention of overtime compensation. The addition — in 1940 — of the provision for further compensation at a prescribed minimum rate for work in excess of eight hours a day makes it abundantly clear that the statute is now designed to do more than merely declare a desirable policy. If, as contended, the specification of extra pay for overtime was intended only to relieve employers from criminal penalties imposed by other sections for demanding or permitting such work, enactment of section 325a, requiring premium pay for overtime, would have been unnecessary and superfluous. A few months earlier Congress had suspended the operation of the Eight-Hour Law as to all persons employed on work for the armed forces (U. S. Code, tit. 50, Appendix, § 1155, subd. [b]) — undoubtedly embracing the vast majority of government contractors. As to them, the suspension of the law was effective relief from criminal or other penalties for overtime work, and other employers could have been relieved simply by making the provision more inclusive. That being so, the measure actually enacted — restoring the eight-hour day as the basis for computing wages of workmen on government jobs and permitting longer hours " upon compensation " for overtime — demonstrates that Congress was intent not only upon relieving employers of penalties, but upon securing extra pay to laborers for longer hours of work.

The fact that plaintiff worked abroad presents no obstacle to his recovery. The Eight-Hour Law involves a subject matter in which the United States is vitally concerned — work standards on its own public works and projects. Unquestionably, Congress had the power in such cases to prescribe hours of work and rates of pay and to insist that such standards be observed regardless of where the work is to be performed (see 25 U. S. Atty. Gen. [1905], p. 441). By its terms, the statute embraces " *Every contract* made to which the United States * * * is a party, and every such contract made for or

on behalf of the United States " (§ 324). (Emphasis supplied.) Words of such inclusive reach cannot properly be read to exclude contracts for government jobs abroad. (See Executive Order No. 8623, Code of Fed. Reg., Cum. Supp., tit. 3, p. 850, wherein the President took a similar view; cf. *Connell* v. *Vermilya-Brown Co.*, 164 F. 2d 924.) Insofar as the civil aspects of the statute are concerned — and we consider no other — it clearly applies to such work, at least when performed by United States citizens under a contract of employment entered into in this country, and, so applied, we see no constitutional objection to its enforcement. In much the same manner, obligations imposed by the workmen's compensation and liability insurance laws of one State are held enforcible even though the accident occurs in another State. (See, e.g., *Matter of Post* v. *Burger & Gohlke*, 216 N. Y. 544, 549; *Industrial Comm.* v. *McCartin*, 330 U. S. 622, 626; *Alaska Packers Assn.* v. *Industrial Accident Comm.*, 294 U. S. 532, 542–543; cf. *Levy* v. *Daniels' U-Drive Auto Renting Co.*, 108 Conn. 333.)

In any event — and quite apart from the cause of action given by the statute — plaintiff clearly has a right to sue on the basis of the contract between defendants and the Federal Government. By " principles of general contract law " — here controlling since we are concerned with the construction of a contract of the Federal Government (see *Priebe & Sons* v. *United States*, 332 U. S. 407, 411; see, also, *United States* v. *Standard Rice Co.*, 323 U. S. 106, 111) — as well as by the law of New York, suit on a contract may be maintained by a third party beneficiary. (See *German Alliance Ins. Co.* v. *Home Water Co.*, 226 U. S. 220, 230; *Robins Dry Dock & Repair Co.* v. *Flint*, 275 U. S. 303, 307; *United States* v. *Morley Constr. Co.*, 98 F. 2d 781, 789; see, also, 2 Williston on Contracts [Rev. ed.], § 357, p. 1049; Restatement, Contracts, § 133, subd. [1], par. [a]; § 145, subd. [a]; *Lawrence* v. *Fox*, 20 N. Y. 268; *Seaver* v. *Ransom*. 224 N. Y. 233.) In this case, as noted above, defendants, by their contract with the government, expressly agreed to " obey and abide by all applicable laws * * * of the United States ", and that, of course, included the Eight-Hour Law. In our view, that agreement, when related to the statute, was, in effect, a promise to pay extra compensation for overtime work, and entitled

an aggrieved laborer or mechanic to enforce that promise as a third party beneficiary. (See *United States* v. *Morley Constr. Co., supra,* p. 789; *Crabb* v. *Welden Bros.,* 65 F. Supp. 369, 377; see, also, *Seaver* v. *Ransom, supra,* p. 238; *Fata* v. *Healy Co.,* 289 N. Y. 401; *Strong* v. *American Fence Constr. Co.,* 245 N. Y. 48; *Novosk* v. *Reznick,* 323 Ill. App. 544.)

The determination of the Appellate Division dismissing the complaint was erroneous and must be reversed. Since, however, the Appellate Division reversed the judgment of the Trial Term on the law alone, the Civil Practice Act compels us (1) to presume that the Appellate Division did not consider any questions of fact in the case (§ 602), and, upon reversing, (2) to remit the case to the Appellate Division for determination upon any questions of fact raised in that court (§ 606). Such a remission is here required because a question of fact, disputed at the trial, as to the number of overtime hours that plaintiff worked, may have been raised on the appeal in the Appellate Division.

The judgment of the Appellate Division should be reversed, and the case remitted to the Appellate Division for determination upon the questions of fact, if any, raised in that court, with costs in this court and in the Appellate Division to abide the event.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Judgment reversed, etc.