VEADER et al. v. BAY STATE DREDGING
& CONTRACTING CO. et al.

Civ. A. No. 7275.

United States District Court
D. Massachusetts.

June 24, 1948.

838

Herbert S. Avery, of Boston, Mass., for plaintiffs.

Bailen, Snyder & Vernagl'a and Herman Snyder, all of Boston, Mass., for defendant Bay State Dredging & Contracting Co.

William T. McCarthy, U. S. Atty., and Harry Bergson, Jr., Asst. U. S. Atty., both of Boston, Mass., for United States.

FORD, District Judge.

Plaintiffs' complaint states a cause of action in four counts claiming compensation for overtime work and for failure to pay appropriate minimum wages.

Count 1 names the Bay State Dredging & Contracting Company as defendant, and sets forth a cause of action under Section 16(b) of the Fair Labor Standards Act. 29 U.S.C.A. §§ 201–219.

Count II alleges that Bay State has failed to pay minimum wages according to the schedule of prevailing wages required by the Bacon-Davis Act, 40 U.S.C.A. § 276a et seq., and that the United States has withheld from Bay State certain sums on account of Bay State's violations of the Act, which funds plaintiffs seek to recover from the United States. There are also allegations that the United States and Bay State were engaged in a joint venture on the project here involved, and that Bay State caused less than minimum wages to be paid through fraud, intimidation, coercion and duress. The allegations of fraud, intimidation, coercion and duress are not appropriate for proceedings under the Bacon-Davis Act and I treat them as surplusage.

Count III alleges a joint venture by the United States and Bay State, and complains of the failure of Bay State to pay time and one-half for hours worked in excess of eight hours under the Eight-Hour Law, 40 U.S.C.A. §§ 321–326. Although the United States is named as a party de-

fendant in this count, there is no allegation except by way of implication from the allegation of a joint venture, that the United States has failed to pay anything due; the complaint is that Bay State has failed to pay in violation of the Act.

Count IV as amended sets forth what appears to be a claim for fraud and duress against Bay State and the United States, as a consequence of which they hold as trustees funds belonging to the plaintiffs, and also a claim against the United States for amounts withheld by the United States from Bay State due to Bay State on the contracts.

The United States moves to dismiss so much of the complaint as seeks relief against it on the grounds that the court lacks jurisdiction because the United States has not consented to be sued in respect of any of the claims asserted, and that the complaint fails to state a claim against the United States upon which relief can be granted. Bay State moves to dismiss counts III and IV of the complaint on the ground that they fail to state a claim against Bay State upon which relief can be granted, and that no civil action can be maintained by plaintiffs under the Eight-Hour Law.

## Count I

Plaintiffs seek no relief against the United States, and Bay State has not moved to dismiss.

## Count II

Bay State has not moved to dismiss this count, so it stands against Bay State.

The discussion concerning Count II insofar as it asserts a claim against the United States involves two questions: (1) Did Congress intend, by the Bacon-Davis Act, to create any private rights against the United States? (2) If so, did Congress consent that the United States be sued to enforce those rights?

 Section 276a of the Bacon-Davis Act requires that the specifications for certain contracts to which the United States is a party must contain minimum wage provisions for laborers and mechanics; and requires further that every contract entered into pursuant to the specifications must contain a stipulation that the contractor shall pay laborers and mechanics at wage rates

not less than those stated in the specifications; and the contract must stipulate that the government may withhold from the contractor so much of the accrued payments as may be necessary to pay any deficiencies in wages to the laborers and mechanics. Section 276a—2(a) authorizes and directs the Comptroller General of the United States to pay such withheld wages directly to the laborers and mechanics. Section 276a—2 (b) grants to laborers and mechanics, in the event the withheld sums do not suffice to reimburse them their wages due, the right of action against the contractor and his sureties which is conferred by law upon persons furnishing labor or materials.

It seems clear that the above provisions confer no right on the laborers and mechanics to have the United States withhold sums to pay their wages; but Section 276a—2 does give them a right against the United States to the sums due them as wages after such sums have been withheld. The question then is whether they can sue the United States for the amounts withheld, and, if so, upon what conditions.

 The United States is immune from suit except where it consents to be sued. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058, citing many cases. By the creation of claims against itself, the United States does not bind itself to provide a remedy in the courts. It may give a right without a remedy, or it may provide only an administrative remedy. Dismuke v. United States, 297 U.S. 167, 172, 56 S.Ct. 400, 80 L.Ed. 561; United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011; United States v. Bang, 8 Cir., 117 F.2d 515. 516; Commers v. United States, D.C., 66 F.Supp. 943, 949. Where a special remedy is created, it is usually exclusive (United States v. Babcock, supra), at least if Congress so intends. Dismuke v. United States, supra. But if the right exists and the claimant is entitled to relief according to facts found or admitted to exist, then the courts can review the denial of such relief. Dismuke v. United States, supra. However, as a minimum preliminary condition to resort to the courts, the claimant must assert his compliance with the terms

prescribed by Congress, else the courts cannot assume to take jurisdiction. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235; United States v. Seminole, Nation, 299 U.S. 417, 57 S.Ct. 283, 81 L.Ed. 316; United States v. Sherwood, supra; Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; United States v. Felt Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025. Any waiver of governmental immunity to be sued must be strictly construed; Congress will not be presumed to intend to waive the immunity of the government beyond the clear import of the statute involved. United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598. So here, if plaintiffs would secure relief against the United States in the courts, they must as a condition precedent assert a demand on the Comptroller General, and a refusal by him to pay; he must at least have the opportunity to make a preliminary determination of their rights to the funds withheld. This follows from the Congressional Directive that he pay to laborers and mechanics any "wages found to be due." Plaintiffs do not allege any demand on the Comptroller, any determination of their rights by him, or any refusal by him to pay. Under these circumstances, this court cannot take jurisdiction of the suit against the United States.

Moreover, I might say that it is extremely doubtful that the United States has consented to be sued at all under the Bacon-Davis Act for funds withheld by it from the contractor. Where, as here, Congress has granted expressly a right to sue private persons, should it be held to have waived the sovereign immunity of the United States against suit merely by implication from the fact that it retains sums due the contractor in amounts equal to sums due from the contractor to his employees?

■ The complaint mentions a joint venture of the United States and Bay State. If this was intended by plaintiffs to mean that they have rights directly against the United States as a contractor-employer, there is no merit to the proposition. The Bacon-Davis Act in no way binds the United States to pay its employees in accordance with the terms of the Act. Its effect is only upon those who contract with the government.

Count II must be dismissed as to the United States.

### Count III

■ Although the United States is named as a defendant to Count III, there are no allegations that the United States has done or omitted to do any acts which would give plaintiffs grounds for relief. Plaintiffs again allege that the United States and Bay State were engaged in a joint venture, but if any merit attaches to this allegation (and I think there is none), the count still does not allege facts upon which relief against the United States could be granted. Therefore, the count is dismissed as to the United States.

In considering Bay State's motion to dismiss Count III, the question is whether Congress intended by the Eight-Hour Law to create any private rights of action against contractors, or did Congress merely enact a penal law?

Section 321 of the Eight-Hour Law prescribes an eight-hour maximum working day for certain classes of workmen, and makes it unlawful for any officer of the government, or for any contractor or subcontractor, to require or permit such workmen to work in excess of eight hours. Section 322 makes it a misdemeanor for any officer of the government or any contractor or subcontractor intentionally to violate Section 321, and subjects the violator to a fine not to exceed $1000, or to imprisonment for not more than six months, or both. Section 324 requires that every contract involving the employment of laborers and mechanics include a provision that none of such workmen should be required or permitted to work over eight hours a day, and should stipulate a penalty of $5 per day per workman involved for each violation, such penalty to be withheld by the government for the use and benefit of the government from payments under the contract. To recover such penalties, the contractor or subcontractor aggrieved must follow certain prescribed procedures.

By the Act of March 4, 1917, 39 Stat. 1192, 40 U.S.C.A. § 326, Congress provided that the President might suspend the Eight-Hour Law in case of national emergency, provided that wages of persons employed on such contracts should be computed on a basic day rate of eight hours with at least time and one-half for overtime. By the Act of June 28, 1940, 54 Stat. 676, Congress suspended the Eight-Hour Law as to persons engaged on work covered by Army, Navy, and Coastguard contracts. This was superseded by the Act of September 9, 1940, 54 Stat. 884, 40 U.S.C.A. § 325a, which provides: "Notwithstanding any other provision of law, the wages of every laborer and mechanic employed by any contractor or subcontractor engaged in the performance of any contract of the character specified in sections 324 and 325 of this title, shall be computed on a basic day rate of eight hours per day and work in excess of eight hours per day shall be permitted upon compensation for all hours worked in excess of eight hours per day at not less than one and one-half times the basic rate of pay." Cf. Walling v. Patton-Tulley Transp. Co., 6 Cir., 134 F.2d 945, 949.

■ As originally enacted in 1868, 15 Stat. 77, Ch. 72, the Eight-Hour Law was a directive by the government to its agents, concerning which any employee of the government had no right of action. United States v. Martin, 94 U.S. 400, 24 L.Ed. 128; Timmonds v. United States, 7 Cir., 84 F. 933. The law was enlarged in 1892 to include contractors and subcontractors, and added criminal sanctions. 27 Stat. 340, Ch. 352. The purpose was to better the conditions of workingmen by reducing their hours, not by increasing their pay. Criminal penalties were appropriate for noncompliance (Ellis v. United States, 206 U.S. 246, 27 S.Ct. 600, 51 L.Ed. 1047, 11 Ann.Cas. 589) but not civil suits to collect pay for any time worked in excess of eight hours per day. United States v. Moses, 9 Cir., 126 F. 58. Sections 324 and 325 were added in 1912, giving the additional $5 per day penalty to the government, 326 was added in 1917, and 325a was added in 1940 as a war measure. The

question involved here is whether the provisions of Section 325a were intended by Congress to change the Eight-Hour Law so as to give a cause of action against a contractor who violated the basic provisions of the Eight-Hour Law. In other words, did the Eight-Hour Law become the source of private rights instead of merely penal by reason of Section 325a?

It is true, as argued by Bay State, that there is nothing in the act that in terms confers upon laborers and mechanics a right of action. But this does not preclude the conclusion that Congress intended they should have such. It is plain the statute is remedial and enacted after the Fair Labor Standards Act for the purpose of eliminating sub-standard conditions. Walling v. Patten Tulley Transp. Co., supra, 134 F.2d at page 949. Consequently, it should be construed liberally in aid of those it intended to benefit.

■ In the case of Filardo v. Foley Bros. Inc. 297 N.Y. 217, 78 N.E.2d 480, the Court of Appeals of New York held that the Eight-Hour Law gave such right to sue the contractor. On the other hand, there are two federal court rulings to the contrary. Willis v. du Pont de Nemours & Co., D.C.E.D.Okla., March, 1948, 76 F. Supp. 1010; Chambers v. Florence Construction Co., D.C.Ga., 79 F.Supp. 845. Also, the Filardo case decided that both under Federal and New York law, quite apart from the cause of action given by the statute, the plaintiff had a right to sue as a third party beneficiary, on the basis of the contract between the contractor and the United States.

There is no need to repeat here the reasoning of this case. I agree with the reasons advanced for concluding that a cause of action is given by the statute. As the Court stated in 78 N.E.2d at page 482, "if the plaintiff may not sue to enforce it [the statute], the benefits accorded would be indeed empty and illusory. He would find himself in the position of having been given a benefit he is unable to enjoy, a right he is helpless to enforce." It does not seem to this court that Congress would make it possible for classes of workmen to work in excess of eight hours provided

842

time and one-half of the basic rate of pay was paid for the excess and at the same time intend that no remedy was available to enforce the right. Every man is entitled to his due and it is the opinion of this court that Congress intended he should have it.

For the reasons stated, Bay State's motion to dismiss Count III is denied.

## Count IV.

Count IV, if I understand it, is based on a claim that Bay State holds as constructive trustee as a result of fraud practised on plaintiffs' wages earned by and belonging to the plaintiffs. This count is vague and difficult to understand but if the plaintiffs intend to prove that wages belonging to them were fraudulently withheld by Bay State, the claim appears to this court to be one for deceit. Bay State's motion to dismiss is denied. Dioguardi v. Durning, 2 Cir., 139 F.2d 774.

As to the United States, I find great difficulty in deciding on just what grounds the plaintiffs intend to assert a claim. Paragraph 4 of the complaint as amended asserts a contract between Bay State and the United States, and states in part: "that because of various circumstances the United States of America has not paid or caused to be paid to said Bay State Dredging & Contracting Co., all of the wages due the plaintiffs for labor and services performed by them; that the Bay State Dredging & Contracting Co., is entitled to receive from the United States of America said unpaid wages and that the plaintiffs to whom said wages were to be paid and for whose benefit said wages were intended now claim said unpaid wages from the United States of America." If this is the substance of plaintiffs' claim against the United States, I think United States v. Sherwood, supra, is controlling and this court has no jurisdiction.

Count IV is dismissed as to the United States.

The motion of the United States to dismiss the complaint against it is granted.

The motion of Bay State to dismiss Counts III and IV is denied.