Fen X. CHEN, Qiu Chen, Yu Zheng, Chai Chen, Dang Zheng, Hua Chen, Yong Chen, Kun Huang, and Qi Liu, Plaintiffs,

v.

STREET BEAT SPORTSWEAR, INC., Albert Papouchado, Michael Amar, Jian Wen Liang a/k/a Raymond Liang, Fen Chen a/k/a Hua Fen Chen, Lun Wei Fan, 1A Fashions Inc., and Red Arrow Inc., Defendants.

No. 01–CV–0792(ILG).

United States District Court, E.D. New York.

Jan. 22, 2002.

Kenneth Kimerling, Asian American Legal Defense and Education Fund Inc., New York, NY, for plaintiffs.

Penny Ann Lieberman, Jackson Lewis Schnitzler & Krupman, White Plains, NY, Alan B. Pearl, Alan B. Pearl & Associates, P.C., Syosset, NY, for Street Beat Sportswear, Inc., defendant.

Marvin M. David, Bryer & David, New York, NY, for Jian Wen Liang, defendant.

### MEMORANDUM AND ORDER

GLASSER, District Judge.

### SUMMARY

This action arises out of alleged federal and state violations of the minimum wage

and overtime provisions of the Fair Labor Standards Act ("FLSA") and New York Labor Law. Plaintiffs Fen X. Chen, Qui Chen, Yu Zheng, Chai Chen, Dang Zheng, Hua Chen, Yong Chen, Kun Huang, and Qi Liu ("plaintiffs") bring this action against two garment factories, 1A Fashions Inc. and Red Arrow Inc. ("factory defendants"), three individuals who allegedly own and operate said garment factories, a manufacturer of women's sportswear, Street Beat Sportswear, Inc. ("Street Beat"), and its officers and owners, Albert Papouchado ("Papouchado") and Michel Amar ("Amar") (collectively "manufacturer defendants").[1] The manufacturer defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of claims four, five and six of the amended complaint alleging negligence against the manufacturer defendants, and of claim seven, the third-party beneficiary claim, for breach of contract. For the reasons that follow, the motion is denied.

## BACKGROUND

For the purpose of deciding this motion, the following facts alleged in the complaint are assumed to be true. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The factory defendants and the manufacturer defendants are the plaintiffs' "employers or joint employers within the meaning of the [FLSA]." (*See* amended compl. ¶ 11.) The manufacturer defendants "hired, retained or contracted with the [f]actory [d]efendants" to produce their sportswear providing them with garment designs, sewing instructions, textiles, trimmings and other materials. (*Id.* ¶¶ 14, 57, 63, 67.) The factory defendants are a "fully integrated element of Street Beat's manufacturing operation," and approximately 90% of the garments made by the factory defendants are produced for the manufacturer defendants. (*Id.* ¶¶ 14, 23.)

The plaintiffs worked for the "defendants" from 1996 until 2000 as garment inspectors, hangers, button sewers, iron pressers, or general helpers.[2] (*Id.* ¶ 13.) The plaintiffs worked seven days a week with only one or two days off a year, and often worked from early in the morning until past midnight and into the next morning. (*Id.* ¶ 17.) The plaintiffs were paid either by the piece or by the hour, and were never paid overtime wages for the hours worked past forty hours a week. (*Id.* ¶¶ 15, 16, 19.) The factory workers were threatened with the loss of their jobs if they did not comply with this work schedule. (*Id.* ¶ 20.) The "defendants" maintained false employment records, including false time records, in an effort to conceal their employment practices. (*Id.* ¶ 21.)

The plaintiffs allege that the manufacturer defendants knew or should reasonably have known that the plaintiffs were not paid minimum wage and overtime pay. (*Id.* ¶ 24.) Street Beat had a representative present in the factories on an average of three times a week who monitored the production and quality of the plaintiffs' work. (*Id.* ¶ 25.) In addition, Street Beat was put on notice of prior violations because it had been previously sued by other factory workers, and the United States Department of Labor ("DOL") had found that Street Beat had violated the FLSA in the past. (*Id.* ¶ 26.) According to the plaintiffs, the manufacturer defendants contracted with the factory defendants at prices too low and at delivery conditions

---

1. Plaintiff Fen X. Chen and the other Chen plaintiffs have no relation to defendant Fen Chen. (*See* amended compl. at ¶ 4.)

2. Several times in the amended complaint, the plaintiffs refer to "defendants" without specifying factory defendants or manufacturer defendants.

too onerous to allow for payment of minimum wage and overtime pay. (*Id.* ¶ 28.)

On February 26, 1997, the manufacturer defendants signed a Memorandum of Agreement ("MOA") with the DOL by which the manufacturer defendants entered into an ongoing Augmented Compliance Program Agreement ("ACPA") to ensure factory compliance with the FLSA. (*Id.* ¶ 31; MOA and ACPA attached to amended compl. as Exs. A(MOA) and B (ACPA).) According to the plaintiffs, the ACPA imposed several duties on the manufacturer defendants, including but not limited to (1) the pre-contract evaluation of the economic feasibility, based on the price terms involved, of a contractor's compliance with the FLSA; (2) the ongoing monitoring of contractor compliance with the FLSA; and (3) in the event that FLSA violations by a contractor were detected by the manufacturer defendants, a suspension of shipment of all goods affected by said violations and payment of all unpaid back wages. (*See* amended compl. ¶ 31.)

The plaintiffs allege that the manufacturer defendants "completely controlled and dominated" the factory defendants, and "each defendant aided and abetted the wrongful acts of the others." (*Id.* ¶ 22.) In addition, "each of the defendants was the agent, employee and/or joint venture partner of, or was working in concert with the co-defendants and was acting within the course and scope of such agency, employment and/or joint venture or concerted activity." (*Id.* ¶ 32.)

In their complaint, the plaintiffs bring, *inter alia,* three negligence causes of action against the manufacturer defendants, including negligent supervision, negligent hiring, and a negligence *per se* claim under the federal and state "hot goods" provisions of the FLSA, 29 U.S.C. §§ 215(a) and 217, and New York Labor Law § 345(10). (*Id.* ¶¶ 56–70.) The plaintiffs also assert a third-party beneficiary claim for breach of contract alleging that they are the "third-party beneficiaries" to the [DOL's] contract with Street Beat, and that Street Beat "materially beached" the terms of that agreement.[3] (*Id.* ¶¶ 73, 74.) The plaintiffs seek unpaid wages, including minimum wage, overtime pay and spread hours pay, and liquidated damages and/or interest. (*Id.* at 16–17.)

The manufacturer defendants now move to dismiss these claims, arguing that the negligence claims are barred by the exclusivity provision of the New York Workers' Compensation Law ("WCL"), N.Y. Work. Comp. L. § 29(6), and that the plaintiffs were not the intended beneficiaries of the contract between Street Beat and the DOL.[4]

### DISCUSSION

When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must take all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; *Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir.1989). The court's consideration on a motion to dis-

---

3. The plaintiffs concede that their third-party beneficiary claim was not intended to be asserted against Papouchado and Amar, and, accordingly, withdraw the claim as to those defendants. (*See* Memorandum in Support of Opp'n to Motion to Dismiss ("Mem. in Opp'n") at 1 n. 1.)

4. According to the manufacturer defendants, their counsel had written to plaintiffs' counsel

in accordance with Fed.R.Civ.P. 11, requesting that the plaintiffs withdraw with prejudice their negligence claims contained in the original complaint, on the ground that they were barred under the exclusivity provision of the WCL. (*See* Mem. in Opp'n at 3.) Instead, the plaintiffs filed this amended complaint adding additional plaintiffs and re-pleading certain facts and their negligence claims. (*Id.*)

miss is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Carrabus v. Schneider*, 119 F.Supp.2d 221, 225 (E.D.N.Y.2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## I. *Negligence Claims*

### A. *The Workers' Compensation Law*

The manufacturer defendants urge that the exclusivity provision of the WCL precludes the maintenance of the plaintiffs' negligence action. Before addressing the relevant statute relied upon by the defendants, a brief overview of the objective of the WCL would, in the Court's view, be instructive.

At common law, the burden of disability resulting from a work-related injury was borne by the worker with devastating consequences for himself, his family and society. Liability sought to be imposed upon the employer was, more often than not, rendered futile by the judicially created defenses of the fellow-servant rule, assumption of the risk, and contributory negligence. *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Torts § 80 (Fifth Edition 1984). The enactment of workers' compensation laws by virtually all of the states early in the twentieth century was designed to abolish those defenses and impose liability upon employers for disabling work-related injuries regardless of the employer's negligence, the negligence of his employee, or the negligence of the employee's fellow workers. The employee, "[i]n return for the employer's liability without fault for certain fixed but limited compensation for industrial accidents and diseases, . . . surrender[ed] his right to any other remedy he may have had at common law." Study of the Workmen's Compensation Law, New York Law Revision Commission Reports, at 687 (1962).

■ The relevant statute surrendering the employee's common law remedies is Workers' Compensation Law § 29(6), which provides in relevant part: "The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee, . . . when such employee is injured or killed by the negligence or wrong of another in the same employ . . . ." That the statute was aimed at disabling injuries resulting from industrial accidents is made manifest by Section 2(7) of the WCL, which reads, in relevant part: "Injury" and "personal injury" mean only "accidental injuries arising out of and in the course of employment, and such disease or infection as may naturally and unavoidably result therefrom . . . ."

Indicative also of the restrictive meaning intended to be conveyed by the definition of "injury" in Section 2(7) is Section 15 of the WCL which provides for the schedule of compensation to be provided in case of disability, and Section 37 which defines "disability" to mean "the state of being disabled from earning full wages at the work at which the employee was last employed" and "disablement" to mean "the act of becoming . . . disabled."

The application of those statutes to the allegations of this complaint drives the Court to conclude that the defendants' interposition of the WCL as precluding the plaintiffs' negligence claims, so styled, is misplaced. A plain reading of those statutes in the context of the historical genesis of the WCL can leave no doubt that the plaintiffs here claim no "accidental injury,"

that is, they claim no specific physical harm nor do they seek compensation for psychic trauma provided for in the schedule of compensation of Section 15, nor do they claim that they are disabled from earning full wages at the work at which they were last employed within the meaning of Section 37. On the contrary, they claim to be paid only for the wages and other wage related monies to which they are entitled for the grueling work they were compelled to perform and which only persons who were not disabled could conceivably have endured.

The Court is not unmindful of the cases in which claims of negligent hiring, retaining and supervising an employee have been held to be precluded by the WCL. In virtually every case, that claim of negligence is added as an appendage to an action brought primarily to redress claims of discrimination in one form or another with no indication that consideration was given in them to the historical underpinning of the WCL or to the sections of it which were alluded to above. *See, e.g., Lee v. Overseas Shipholding Group, Inc.* No. 00–CV–9682, 2001 WL 849747 (S.D.N.Y.2001),; *Salvatore v. KLM Royal Dutch Airlines,* No. 98–CV–2450, 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999); *Pellei v. Int'l Planned Parenthood Fed'n/W. Hemisphere Region, Inc.,* No. 96–CV–7014, 1999 WL 787753 (S.D.N.Y. Sept.30, 1999); *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir. 1997). In *Keough v. Texaco, Inc.,* No. 97–CV–5981, 1999 WL 61836 (S.D.N.Y. Feb.10, 1999), the plaintiff sued his former employer for libel, promissory estoppel, breach of contract, and, again, as an auxiliary claim, negligent supervision. Despite the court's recognition that the plaintiff's injuries were neither physical nor mental as contemplated by Section 29(6), it held that "they are injuries alleged to flow foreseeably from Texaco's negligent conduct arising out of and in the course of Keough's employment."

To conclude that an injury which is neither "mental or physical" and not caused by "accident or disease" is embraced by Section 2(7) is reminiscent of the colloquy between Humpty Dumpty and Alice found in Chapter VI of Carroll's *Through the Looking Glass:*

> "When I use a word," Humpty Dumpty said, ... "it means just what I choose it to mean—neither more nor less."
>
> "The question is," said Alice, "whether you *can* make words mean so many different things."

Notwithstanding the label attached to the claim at issue—namely, "negligent supervision" and "negligent hiring," a reading of the allegations can leave little doubt that the conduct complained of is not negligence at all, but a deliberate and intentional subjection of the plaintiffs to working conditions which are reminiscent of a Dickens novel. Compelling employees to work seven days a week, from early in the morning, past midnight, and into the next morning, with only one or two days off a year and threatening them with discharge if they complained can hardly be characterized as negligence. Neither the form of words used in the pleading nor the label put on the claim is decisive. The issue raised by the facts alleged must be considered regardless of what the pleader called it and the facts alleged here are an indictment of intentional wrongdoing regardless of how those facts are labeled.[5] *See* 9

---

5. In any event, it remains to be ascertained whether either of the defendants have earned the benefit of the exclusivity provision of the WCL by having obtained workers' compensation insurance. *See* WCL § 11 ("if an employer fails to secure the payment of compensation for his injured employees and their dependents as provided in section 50 of this chapter, an injured employee ... may ... elect to ... maintain an action in the courts for damages on account of such injury....")

Wright & Miller, Federal Practice and Procedure: Civil 2d § 2304.

### B. *Employer–Employee Relationship*

A careful reading of the inartfully drafted amended complaint creates an uncertainty as to whether the plaintiffs claim that Street Beat is the general contractor who has engaged 1A Fashions Inc. and Red Arrow Inc. to manufacture garments for them or whether they claim that Street Beat and those factories are the plaintiffs' joint employers. For example, paragraph 28 states "[o]n information and belief, the Manufacturer Defendants *contracted* with the Factory Defendants at prices too low and subject to conditions for delivery too onerous to allow for the payment of minimum wage and overtime pay to Plaintiffs"; and paragraph 30 states that the "Manufacturer Defendants utilize the practice of *contracting* out the production of their garments to Factory Defendants and others similarly situated." (Emphasis added). On the other hand, in paragraph 22, the amended complaint states "[o]n information and belief at all times material to the complaint, each of the Factories was completely controlled and dominated by the Manufacturer Defendants," thus implying, at the very least, something more than merely a contractual relationship, and paragraph 20 states that the "Defendants willfully and intentionally failed to pay Plaintiffs and other workers in the Factories their lawful wages," without distinguishing between the manufacturer defendants and the factory defendants.

■ In either event, the motion to dismiss must be denied. If the manufacturer defendants are ultimately properly viewed as general contractors, then they are not the plaintiffs' employers, and the WCL does not apply. The law in New York is clear that an injured employee of an independent contractor may maintain an action for negligent hiring and negligent supervision against the person or entity who employs the independent contractor. *See Arcure v. Annie Liebovitz Studios, Inc.,* No. 98–CV–9127, 2001 WL 262736, at *4 (S.D.N.Y. Mar.15, 2001) (recognizing exception to general rule against vicarious liability for employers of independent contractors for negligent hiring or negligent supervision); *accord Kleeman v. Rheingold,* 81 N.Y.2d 270, 273–74, 598 N.Y.S.2d 149, 152, 614 N.E.2d 712 (1993); *Cichon v. Brista Estates Assoc.,* 193 A.D.2d 926, 927, 597 N.Y.S.2d 819, 820 (3rd Dep't 1993); *see also Sweezey v. Arc. Elec. Constr. Co.,* 295 N.Y. 306, 311, 67 N.E.2d 369 (1946) (a subcontracter's employee may bring negligence claim against general contractor and is not barred by WCL because general contractor viewed as third-party with respect to that employee). Hence, the plaintiffs may maintain their negligence action against the manufacturer defendants as general contractors.

On the other hand, if the plaintiffs claim that the manufacturer defendants are joint employers with 1A Fashions Inc. and Red Arrow Inc., then the WCL, in our view, is also inapplicable for the reasons stated in Section I.A. of this opinion.

### II. *Third–Party Beneficiary Breach of Contract Claim*

■ In New York, a third-party may enforce a contract if that third-party is an intended beneficiary of the contract. *United Derrickman & Riggers Ass'n v. Local No. 1 Bricklayers & Allied Craftsman,* 119 F.Supp.2d 168, 173 (E.D.N.Y. 2000) (citing *Mortise v. United States,* 102 F.3d 693, 697 (2d Cir.1996)). The applicable law provides that a non-party to a contract may recover "by establishing (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit, and (3) that the benefit to him is sufficiently

immediate, rather than incidental, to indicate the assumption by the contracting parties to compensate him if the benefit is lost." *Cabrera v. DeGuerin,* No. 96–CV–4411, 1999 WL 438473, at *4 (E.D.N.Y. May 18, 1999) (citing *Rosecliff, Inc. v. C3, Inc.,* No. 94–CV–9104, 1995 WL 276156, at * 6 (S.D.N.Y. May 10, 1995)) (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 336, 464 N.Y.S.2d 712, 722, 451 N.E.2d 459 (1983)). A contract is intended for the benefit of a third-party if (1) "no one other than the third party can recover if the promisor breaches the contract or (2) the language of the contract otherwise evidences an intent to permit enforcement by third parties." *MBL Contracting Corp. v. King World Prod., Inc.,* 98 F.Supp.2d 492, 496 (S.D.N.Y.2000); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.,* 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 6, 485 N.E.2d 208 (1985) (adopting terminology and concepts of Restatement (Second) of Contracts § 302).[6] An intention to benefit a third-party may be gleaned from the contract as a whole and the party need not be named specifically as a beneficiary. *Owens v. Haas,* 601 F.2d 1242, 1250 (2d Cir.1979) (citation omitted); *see United Derrickmen & Riggers Ass'n,* 119 F.Supp.2d at 174 ("The parties' intent to benefit a third-party must be shown on the face of the agreement."); *Nepco Forged Prods. Inc. v. Consol. Edison Co. of N.Y., Inc.,* 99 A.D.2d 508, 508, 470 N.Y.S.2d 680, 681 (2d Dep't 1984) ("The best evidence of whether contracting parties intended their

contract to benefit third parties remains the language of the contract itself.").

■ Here, the first element with respect to enforcement by third-parties is satisfied because the agreement between the DOL and Street Beat is a valid and binding contract between parties other than the plaintiffs. As for the second element, the plaintiffs argue that the intent to benefit and permit enforcement of the contract by the plaintiffs as intended third-parties is clear from the language of the ACPA.[7] Specifically, the plaintiffs argue that the ACPA evidences an intent to benefit the plaintiffs because the focus of the ACPA, and every provision therein, is on ensuring through pre-evaluation and monitoring by Street Beat, that factories like those in which plaintiffs worked, pay minimum wage and overtime. (*See* Mem. in Opp'n at 13.) They argue that, had Street Beat complied with its obligations under the agreement, the plaintiffs would have been paid what they were legally entitled to, and that the ACPA provides for recovery by the plaintiffs in the event of a breach. (*Id.*) Street Beat argues that the plaintiffs were only incidental beneficiaries to the agreement because the ACPA expressly provides for the DOL's enforcement and recovery in the event of a breach, and that any payment to employees is simply to effectuate compliance with the FLSA. (*See* Mem. at 11–16.) Moreover, Street Beat argues that, assuming that the ACPA did in fact contemplate enforcement by third-parties, only employ-

**6.** Section 302 of the Restatement (Second) of Contracts provides, in pertinent part: a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary, or (b) the circumstances indicate that the promise intended that the prom-

isee intends to give the beneficiary the promised performance. Restatement (Second) of Contracts § 302 (1979).

**7.** The plaintiffs do not contend, in the alternative, that only they can recover from a breach of the contract. *See supra* at 363 (intent may be shown by the language of the contract *or* by a showing that only the third-party was intended to recover).

ees of the factories listed in the MOA, Excel Fashions Inc. ("Excel Fashions") and Monami Fashions Inc. ("Monami Fashions"), would be entitled to enforce the agreement, and not the plaintiffs in this case. (*Id.* at 13.)

Based on the language of the agreement itself, it is strikingly obvious that the entire purpose of the ACPA is to ensure that employees of factories which contract with Street Beat are paid minimum wage and overtime, and that it was they who were directly intended to be benefitted. As described in the preamble of the ACPA, Street Beat entered into the agreement with the DOL to "promot[e] compliance . . . with Section 15(a)(1) of the [FLSA]." (*See* ACPA at 3, attached to amended compl. as Ex. B.) Section 15(a) states in pertinent part: "it shall be unlawful for any person . . . to transport, offer for transportation, ship, deliver, or sell in commerce . . . any goods in the production of which any employee was employed in violation of section 206 or section 207 of this title." 29 U.S.C. § 215(a). Section 206 of the FLSA provides for minimum wage payments, and Section 207 provides for overtime compensation. 29 U.S.C. §§ 206, 207. Thus, the ACPA explains from the onset, as evidenced in its introductory paragraph, that its purpose is to ensure that factories hired by Street Beat for the production of its garments pay their employees minimum wage and overtime.

The intent to benefit factory employees such as plaintiffs here is further evidenced in the body of the ACPA, and specifically in Section 8 which will be discussed in order below. Starting at the beginning of the ACPA, Section 3 describes the procedures by which Street Beat agreed to evaluate a potential factory in determining whether to engage in business with that

factory for the production of its garments. (*See* ACPA, sec. 3.) Before contracting with any factory, Street Beat must review with the owner of the factory the terms and purposes of the Employer Compliance Program ("ECP")[8] and the ACPA; the economic feasibility of the price terms that are involved, in light of compliance with the FLSA; the factory's willingness and ability to fully understand and fully comply with the FLSA; and the obligation of the factory to advise the manufacturer when and if it is unable to meet the requirements of the FLSA. (*Id.*) Section 3 further requires that Street Beat document its findings, and that Street Beat must decline to engage in business with any factory if Street Beat's evaluation discloses an unreasonable risk that the FLSA will not be complied with. (*Id.*)

Section 4 states that Street Beat will monitor and enforce full compliance with the FLSA and the ECP "by all contractors in all activities connected with any purchase by the [manufacturer]," and Section 5 describes Street Beat's record keeping obligations of all of its purchases. (*Id.* sect. 4, 5.) Section 6 outlines the duties and steps Street Beat must take when it discovers that a factory has failed to comply with the FLSA. (*Id.*, sec. 6.) Once a violation has been detected, Street Beat must notify the DOL, and may be required to provide the DOL with a report, including copies of payroll records for each week the violations occurred, a certification from the factory that the records are accurate, copies of employee paystubs, and copies of payroll checks. (*Id.*)

Most significantly, Section 8 outlines the procedures for payment of back wages to the employees of contracting factories.

---

**8.** The ECP is a contract between the factory and the manufacturer, and obligates the factory to comply with, *inter alia,* the minimum wage and overtime provisions of the FLSA. (*See* ECP, attached to ACPA.)

(*Id.*, sec. 8.) Section 8 states that Street Beat

> will make payments to the DOL in an amount sufficient to enable the DOL to allocate and disburse monies to the employees of [c]ontractors (or, at the option of the [manufacturer] if authorized by the DOL, *to enable the [manufacturer] to do so directly to the employees of the [c]ontractors* ) in amounts sufficient to compensate the employees for back wages due to them under the [FLSA] from the [c]ontractor.

(*Id.*) (emphasis added). Section 8(a)(ii) provides the payment schedule for compensation to employees of any contractor who violates the FLSA during the term of the ACPA (*see* sec. 8(a)(ii)), and Section 8(a)(i) provides for a special payment schedule to certain factories listed in an "Attachment No. 3" where violations had been detected prior to Street Beat's entering into the ACPA.[9] The factories referred to in Attachment No. 3 are listed in the MOA as Excel Fashions and Monami Fashions. Notwithstanding Section 8(a)(i), the ACPA specifically provides that Street Beat will pay back wages to employees of contractors who engage in business with Street Beat and who violate the FLSA. Thus, recognizing "a right to performance in the beneficiary," the ACPA evidences an intent to benefit employees such as plaintiffs in this case. Restatement (Second) of Contracts § 302(1).

The defendants claim that the ACPA only evidences an intent, if any, to benefit Excel Fashions and Monami Fashions based on subsection 8(a)(i) and the MOA. This claim is not supported by a plain reading of Section 8, the ACPA generally, and the MOA. Street Beat entered into the MOA as a means of resolving prior complaints involving Excel Fashions and Monami Fashions, based on wage and hour violations, and also as a vehicle for enter-

ing into the ACPA. (*See* amended compl. ¶ 26; Mem. in Opp'n at 7; Mem. at 13.) Nothing in the language of the MOA or the ACPA suggests that the ACPA was limited to Street Beats' dealings with Excel Fashions and Monami Fashions. The MOA states that "the Firm [Street Beat] and the DOL hereby enter into the [ACPA] ... whose terms and conditions are hereby incorporated by reference into this MOA" and is "subject to the further terms, conditions, and clarifications set forth in this MOA." (*See* MOA, attached to amended compl. as Ex. B.) The MOA adds only two additional terms to the ACPA. First, the MOA states that Excel Fashions and Monami Fashions are deemed listed in Attachment No. 3 as referred to in Section 8(a)(i) of the ACPA, because violations by these two factories had been found prior to the ACPA. (*Id.*) Second, the MOA requires a heightened monitoring of compliance, as described in subsection 11(e) of the ACPA, with respect to Excel Fashions. (*Id.*) The fact that Excel Fashions and Monami Fashions are listed in the MOA for purposes of Attachment No. 3 has no effect whatsoever on subsection 8(a)(ii) which describes Street Beats' payment obligations "[w]ith respect to any act or omission by a Contractor," who violates the FLSA during the term of the ACPA. (*See* ACPA, sec. 8.) Moreover, the heightened monitoring that is required as to Excel Fashions does not eviscerate Street Beat's obligations with respect to other factories. The language of the ACPA shows a specific intent to compensate all employees of contracting factories and not just employees of Excel Fashions and Monami Fashions and the MOA does not in any way alter this purpose.

Section 9 describes the remedial process for contractor violations, and states, in pertinent part, that the DOL and Street Beat

---

**9.** Attachment No. 3 was not attached to the ACPA filed with the Court.

will attempt to reach an agreement on the total amount to be paid to the affected employees, but, in the absence of a prompt agreement, the DOL will decide the proper amount on its own. (*Id.* sec. 9(c).)

Section 10 describes the potential of litigation in the event of a breach of the ACPA. That section states that the DOL will not initiate litigation against Street Beat without first providing written notice to allow Street Beat an opportunity to respond to the allegations. (*Id.* sec. 10(a).) However, such notice will not be required if the DOL determines, *inter alia,* that Street Beat willfully violated the FLSA and/or the ACPA or that such violation was imminent. (*Id.*) Section 10(c) states that "the activities that [Street Beat] undertakes by this ACPA to engage in are subject to enforcement by specific performance during the term of the ACPA *at the instance of the DOL.*" (*Id.*), sec. 10(c) (emphasis added). Because the ACPA's remedial scheme does not expressly provide for third-party beneficiary suits to enforce the ACPA, the defendants argue that the parties to the contract never intended to permit enforcement by persons other than the DOL. However, the ACPA's silence on this issue is not fatal to the plaintiffs' claim because, as noted *supra,* an intent to benefit the plaintiffs may otherwise be gleaned from the contract as a whole.[10] *See Owens,* 601 F.2d at 1250 (citation omitted). Moreover, while Section 10 provides that Street Beat's compliance with the ACPA are subject to specific performance at the instance of the DOL, this statement does not necessarily preclude enforcement by persons other than the DOL. The manifest purpose of the ACPA is to benefit employees of factories who contract with Street Beat by ensuring that factory workers are paid minimum wage and overtime as required by the FLSA. The plaintiffs in this case are exactly those persons whom the ACPA was intended to benefit. Thus, the plaintiffs may sue on the contract for an alleged breach committed by Street Beat. *See Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 600 (2d Cir.1991) (In New York, "a third party [may] enforce a contract if that third party is an intended beneficiary of the contract.")

Neither party explicitly addresses the third element necessary to show enforcement of a contract by third-parties— whether the benefit to the factory workers would be sufficiently immediate to indicate the assumption by the contracting parties of an obligation to compensate them if the benefit is lost. *Cabrera v. DeGuerin,* 1999 WL 438473, at *4 (citation omitted). The Court's own review of the agreement evidences an intent in the ACPA to immediately compensate employees for violations of the FLSA. Specifically, the ACPA requires that once violations are detected by Street Beat, it must report its findings to the DOL, and include in such report, copies of payroll records, a certification from the factory that the records are accurate, employee paystubs, and payroll checks. (*See* ACPA, sec. 6.) Employees are then paid as provided in Section 8(a)(ii): "to the extent that an employing [c]ontracter fails to do so no later than 30 days after demand by the [manufacturer] or the DOL, the [manufacturer] will (no later than 60 days after such demand) pay an amount equal to the back wages due to the employees of the [c]ontractor." (*Id.* sec. 8(a)(ii).) Such payment will be made either to the DOL for disbursement to the

---

**10.** The manufacturer defendants also argue that to allow plaintiffs to bring claims on the contract would permit them to circumvent the remedial scheme which often times requires notice and pre-litigation conferences, thereby depriving Street Beat of the benefit of its bargain. (*See* Reply at 4–5.) While this fact may create a separate problem, requiring the plaintiffs to plead that the remedial steps, as defined in the ACPA, were complied with before bringing suit, that issue is not currently before the Court.

employees of contractors, or, if requested by the manufacturer and authorized by the DOL, directly to the employees. (*Id.* sect. 8(a).) This payment scheme provides for an immediate benefit to factory workers in the event of a breach of the ACPA.

Thus, having concluded that the agreement between the DOL and Street Beat evidences a specific intent to benefit employees such as the plaintiffs in this action, and that such compensation is immediate, the Court concludes that the plaintiffs may enforce the terms of the ACPA. Accordingly, the motion to dismiss the plaintiffs' third-party beneficiary claim is denied.[11]

### *CONCLUSION*

For the foregoing reasons, the defendants' partial motion to dismiss is denied in all respects.

SO ORDERED.

---

**11.** Although the Court has denied the motion for the reasons already stated in the text of this opinion, the Court notes that the plaintiffs' reliance on the law involving government contracts is misplaced. The plaintiffs assert that courts are generally inclined to permit third-party beneficiary claims to enforce contracts with the federal government. (*See* Mem. in Opp'n at 15 citing *Filardo v. Foley Bros.*, 297 N.Y. 217, 78 N.E.2d 480 (1948), *rev'd on other grounds*, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680 (1949) and *United States ex. rel. Johnson v. Morley Constr. Co.*, 98 F.2d 781, 788–89 (2d Cir.1938).) While this may be the case, the contract at issue is not a governmental contract like the contracts described in the cases relied upon in the plaintiffs' briefs. Those cases involve contracts by the terms of which a private entity contracted with the government to perform a service for the government having some benefit to the general public. *See Filardo*, 297 N.Y. 217, 78 N.E.2d 480 (contract to construct military bases); *Morley Constr.*, 98 F.2d at 788 (contract to construct a hospital for the

United States Veteran's Administration). Here, Street Beat did not enter into the ACPA with the DOL to perform a service for the DOL, but rather to ensure compliance with a federal statute. Thus, the cases cited by the plaintiffs are inapposite. In addition, the Restatement (Second) of Contracts § 313 governing contracts entered into with the government or a governmental agency does not place any preference on enforcement of government contracts by third-party beneficiaries. Section 313 simply states that the general rules regarding contracts apply equally to government contracts, noting a few exceptions which do not apply here. Restatement (Second) of Contracts § 313(1) (1979). The Restatement also includes a provision regarding government construction contracts which is distinguishable from the contract in this case. *Id.* § 313(2).